Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
October 2, 2017

**2017 CO 95**

**No. 15SC374, <u>Pineda-Liberato v. People</u>—Sentencing—Deferred Sentences—
Restitution—Court Costs and Fees.**

This case requires the supreme court to determine whether the district court had

the authority to continue to collect unpaid restitution, court costs, and fees ordered as

conditions of petitioner's deferred sentence after the completion of that deferred

sentence.

The supreme court concludes that the district court may collect any unpaid

restitution from the petitioner after the completion of her deferred sentence, until the

restitution has been paid in full. With respect to the unpaid fees and costs, however, the

court concludes that the district court lacked the authority to collect such unpaid

amounts after it terminated the petitioner's deferred sentence, withdrew her guilty plea,

and dismissed her case with prejudice.

Accordingly, the supreme court affirms in part and reverses in part the district

court's orders.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

### 2017 CO 95

### Supreme Court Case No. 15SC374

*C.A.R. 50 Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 14CA286
Weld County District Court Case No. 06CR460
Honorable Julie C. Hoskins, Judge

### Petitioner:

Karla Pineda-Liberato,

v.

### Respondent:

The People of the State of Colorado.

### Order Affirmed in Part and Reversed in Part

*en banc*
October 2, 2017

**Attorneys for Petitioner:**
Douglas K. Wilson, Public Defender
Tracy C. Renner, Deputy Public Defender
  *Denver, Colorado*

**Attorneys for Respondent:**
Cynthia H. Coffman, Attorney General
Matthew S. Holman, First Assistant Attorney General
  *Denver, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.
**JUSTICE COATS** concurs in part and dissents, and **JUSTICE EID** joins the concurrence in part and dissent in part.

¶1     This case concerns the district court's authority to continue to collect from the petitioner, Karla Pineda-Liberato, unpaid restitution, court costs, and fees ordered as conditions of a deferred sentence after the completion of that deferred sentence.[1] The case comes to us on review of two orders from the Weld County District Court, the first finding that the court lacked authority to collect unpaid restitution (but that avenues potentially remained open for the victim to do so), and the second finding that the court lacked authority to collect unpaid fees and costs.

¶2     With respect to restitution, we conclude that the pertinent statutes allow the district court to collect any unpaid amounts from Pineda-Liberato after the completion of her deferred sentence, until the restitution has been paid in full. With respect to the fees and costs ordered as probationary-like supervision conditions, however, we conclude that the district court lacked the authority to collect such unpaid amounts after it terminated Pineda-Liberato's deferred sentence, withdrew her guilty plea, and dismissed her case with prejudice.

¶3     Accordingly, we affirm in part and reverse in part the district court's orders.

## I.  Facts and Procedural History

¶4     The People charged Pineda-Liberato with two felony counts of theft ($500 to $15,000) and two felony counts of providing false information to a pawn broker after

---

[1] We granted certiorari to review the following issue:

> Whether a trial court has the authority to continue to collect restitution, costs, and fees when a defendant has completed a deferred judgment and sentence.

she pawned a laptop computer and a television that she had rented from Rent-A-Center.

¶5 Eventually, Pineda-Liberato entered into a plea agreement under which (1) she would plead guilty to one count of theft; (2) she would receive "a two-year deferred sentence with terms and conditions to include 48 hours of useful public service, pay restitution as ordered by the court, and any other terms and conditions the court deems appropriate"; and (3) the People would dismiss the remaining counts. In addition to these terms, the agreement contained a handwritten addendum that read, "No jail at initial sentencing." If Pineda-Liberato complied with the terms of her deferred sentence, then, according to the parties' Stipulation for Supervised Deferred Sentence, Pineda-Liberato could withdraw her guilty plea and the theft charge would be dismissed with prejudice.

¶6 On November 14, 2006, the district court accepted the terms of the plea agreement, Pineda-Liberato pleaded guilty to one count of theft, and the court dismissed the three remaining charges against her. The court also sentenced Pineda-Liberato to a two-year deferred sentence to be supervised by the probation department.

¶7 Pursuant to the above-described plea agreement, the conditions of the deferred sentence included requirements that Pineda-Liberato pay fees and costs in the amount of $1572.50, complete forty-eight hours of community service, and comply with certain probationary-like "standard conditions" (such as a mandate that she not leave the state of Colorado without written permission from her probation officer or the court).

3

¶8    The fees and costs imposed as a condition of Pineda-Liberato's deferred sentence comprised the following:

- Victim compensation cost:    $125
- Victim assistance surcharge: $162.50
- Time payment fee:            $25
- Supervision fee:             $1200
- Court costs—docket fee:      $35
- Public defender fee:         $25

¶9    After a hearing on December 13, 2006, the court further ordered Pineda-Liberato to pay $1520.45 in restitution to Rent-A-Center.

¶10   In September 2007, the People filed a revocation complaint. According to the complaint, Pineda-Liberato had been detained by federal immigration authorities on July 31, 2007 and deported two days later. As a result, she had "failed to complete her responsibilities under the sentence of Probation [sic]." In order to ensure her return to court should she reenter the United States, the People asked the court to issue a warrant for her arrest.

¶11   The court did so, but the authorities did not arrest Pineda-Liberato, and the court never ruled on the revocation complaint. Instead, for reasons not pertinent here, in 2012, the People moved to "vacate" the warrant and to issue, instead, a summons requiring Pineda-Liberato to appear and to show cause why her probation should not be revoked and the deferred sentence should not be imposed. The court granted the People's motion and issued the summons.

¶12   In October 2013, six years after the People had asked the court to revoke Pineda-Liberato's deferred sentence, the People moved to withdraw their revocation

4

complaint, "terminate probation/deferred judgment and sentence as completed, and vacate the upcoming court date." The court granted this motion on the day that it was filed, ordering that "the revocation complaint in the above-entitled matter be and hereby is withdrawn and probation be terminated." As of that time, Pineda-Liberato had paid $992 toward the court costs, fees, and restitution originally ordered. Of that amount, $704.50 had been applied to restitution, leaving a balance of $815.95 owed to Rent-A-Center.

¶13 Approximately one month later, the People sought, and the court imposed, an additional $520.25 in "transport fees" to be paid into the registry of the court. These fees reflected the costs that the Weld County Sheriff's Office had incurred in extraditing Pineda-Liberato from Texas to Colorado, and they brought the total court costs and fees that Pineda-Liberato owed to $1905.25.

¶14 Shortly thereafter, the district court sua sponte raised the question of whether it still had jurisdiction to collect restitution after the case had been dismissed "based upon the defendant otherwise having completed all other requirements of the deferred sentence except the payment of restitution." The court held a hearing on the matter and on January 3, 2014, issued a written order concluding that it did not. Specifically, the court found that once the People had withdrawn their revocation complaint and the case had been dismissed, the court no longer had jurisdiction over Pineda-Liberato and could no longer require her to pay restitution. The court was careful to note, however, that because the restitution order constituted a "final civil judgment" pursuant to

5

18-1.3-603(4)(a), C.R.S. (2017), Rent-A-Center could collect the unpaid balance of $815.95 "independently, through any legal means available to [it]."

¶15 In reaching this conclusion, the court relied on dicta from People v. Carbajal, 2012 COA 107, ¶ 49, 312 P.3d 1183, 1191 (Carbajal II), which the court interpreted as rendering the restitution order null and void when the case was dismissed. In addition, the court noted that pursuant to both section 18-1.3-602(2), C.R.S. (2017), and section 18-1.3-603, C.R.S. (2017), once a person has successfully completed a deferred sentence, his or her guilty plea is withdrawn, and the case is dismissed, no conviction is deemed to have existed.

¶16 Having obtained this ruling regarding her ongoing restitution obligations, Pineda-Liberato asked the court to address the same jurisdictional issue as to the previously ordered court costs and fees. On January 13, the court issued a second written order, observing that its previous conclusion "that restitution remains as a civil judgment" had been based on the applicable statutes. Because no comparable statute existed by which court costs and fees could be treated similarly, however, the court vacated all "previously ordered court costs and fees," which then totaled $1905.25.

¶17 Pineda-Liberato timely filed a notice of appeal in the court of appeals, and a month later, the General Assembly passed a bill titled, "An Act Concerning Collection of Restitution Ordered Pursuant to a Deferred Judgment." H.B. 14-1035, 69th Gen. Assemb., 2d Reg. Sess. (Colo. 2014); ch. 21, secs. 1–2, §§ 16-18.5-111, 18-1.3-603(4)(a), 2014 Colo. Sess. Laws 152. This Act amended the restitution statute, section 18-1.3-603(4)(a), to provide that restitution orders remain in effect "notwithstanding the

6

termination of a deferred judgment and sentence or a deferred adjudication." See ch. 21, sec. 2, § 18-1.3-603(4)(a), 2014 Colo. Sess. Laws 152. The Act also added section 16-1.3-111, which stated, "The provisions of this article [governing restitution in criminal actions] apply notwithstanding the termination of a deferred judgment and sentence or a deferred adjudication." See ch. 21, sec. 1, § 16-18.5-111, 2014 Colo. Sess. Laws 152.

¶18 Pineda-Liberato then requested, and the court of appeals granted, numerous extensions (totaling 536 days) to file her opening brief. In the meantime, the State Court Administrator wrote to the Chief Judge of the court of appeals, asking the Chief Judge to consider transferring Pineda-Liberato's case to this court. The Administrator explained that in the wake of Carbajal II, he had "advised Chief Judges [and other judicial branch personnel] to put collections efforts on hold in deferred cases that had terminated" and had "instructed them not to vacate judgments regarding restitution, costs, and fees and to retain collected funds unless a court ordered otherwise." Then, the Administrator noted, came (1) the 2014 amendments, which, effective March 7 of that year, clarified that the termination of a deferred sentence did not obviate offenders' obligations to pay outstanding restitution in cases that had ended on or after the effective date, and (2) the instant case, which the Administrator expected would provide guidance regarding unpaid restitution in pre-2014 deferred sentencing cases. The Administrator observed, however, that because of the numerous extensions of time granted Pineda-Liberato, her opening brief was not due until July 2015. This posed a problem because approximately $3.9 million in outstanding restitution and $5.9 million

7

in uncollected fees and costs existed statewide in deferred sentencing cases that had ended between January 1, 2000 and March 6, 2014. According to the Administrator, the importance of providing direction and finality to "victims, offenders, and the judicial branch" regarding these pre-2014 cases that then hung "in limbo" justified transferring Pineda-Liberato's appeal to this court.

¶19 The court of appeals agreed and pursuant to section 13-4-109(1)(a)–(b), C.R.S. (2017), and C.A.R. 50(a)(1)–(2), filed in this court an "ORDER for determination of jurisdiction." After summarizing the facts that the Administrator's letter had provided, the court of appeals asked us to accept jurisdiction to resolve the above-described pre-2014 cases that were then "in limbo." We did so and framed the issue presented as "[w]hether a trial court has the authority to continue to collect restitution, costs, and fees when a defendant has completed a deferred judgment and sentence."

## II. Analysis

¶20 We begin our analysis by describing the applicable standard of review and pertinent rules of statutory interpretation. We then discuss the statutory provisions that control the assessment of restitution and the imposition of court costs and fees as conditions of deferred sentences. Finally, we apply those provisions to determine whether the district court in this case retained the authority to collect restitution, court costs, and fees from Pineda-Liberato after it had dismissed the case against her based on the termination of her deferred sentence.

## A. Standard of Review and Rules of Statutory Interpretation

¶21    A deferred judgment and sentence is created and authorized by statute. <u>See</u> <u>People v. Carbajal</u>, 198 P.3d 102, 105 (Colo. 2008) (<u>Carbajal I</u>).  Statutes similarly govern the conditions of deferred sentences, including, as pertinent here, the assessment of restitution and the imposition of court costs and fees. <u>See</u> <u>id.</u> at 105–06.  The issue in this case, which involves the interaction of all of the foregoing, therefore presents a question of statutory interpretation that we review de novo. <u>See</u> <u>Doubleday v. People</u>, 2016 CO 3, ¶ 19, 364 P.3d 193, 196.

¶22    When we interpret statutes, our primary purpose is to ascertain and give effect to the General Assembly's intent. <u>Id.</u>  To do so, we begin with the language of the statute. <u>Id.</u>  We give words and phrases their plain and ordinary meanings, read them in context, and apply the rules of grammar and common usage. <u>Id.</u>  We also read the statutory scheme as a whole, giving consistent, harmonious, and sensible effect to all of its parts and avoiding constructions that would render any words or phrases superfluous or lead to illogical or absurd results. <u>Id.</u> at ¶ 20, 364 P.3d at 196.  If the statute is unambiguous, then we need look no further. <u>Id.</u>

## B. Statutory Analysis

¶23    In the present case, the district court sentenced Pineda-Liberato to a two-year deferred sentence and, as conditions of the stipulation that she signed, ordered her (among other things) to pay $1520.45 in restitution and $1572.50 in court costs and fees.  After the termination of the deferred sentence (and the addition of transport fees), $815.95 in unpaid restitution and $1905.25 in unpaid court costs and fees remained.  To

determine whether the district court may order Pineda-Liberato to pay these amounts, we first give an overview of the deferred sentencing statute. We then turn to the statutes authorizing the assessment of restitution and the imposition of court costs and fees, and we consider whether a court can continue to collect either restitution, costs, or fees after the termination of a deferred sentence.

## 1. Deferred Sentencing

¶24 A deferred sentence is a sentencing alternative that, we have acknowledged, is not a sentence at all but rather is "a continuance with probation-like supervision conditions." Carbajal I, 198 P.3d at 106; see also §§ 18-1.3-101 to -107, C.R.S. (2017) (authorizing a number of "[a]lternatives in sentencing," including deferred sentencing). At all times pertinent to this case, the deferred sentencing statute, section 18-1.3-102(1), C.R.S. (2017), allowed a district court, after a defendant had pleaded guilty to a felony, to continue the case for up to four years "for the purpose of entering judgment and sentence upon the plea of guilty." In exchange for this continuance, the deferred sentencing statute authorized the district court to impose probationary-like supervision conditions on the defendant. See Carbajal I, 198 P.3d at 105–06.

¶25 Specifically, as pertinent here, section 18-1.3-102(2) permitted the prosecutor, before the entry of the guilty plea, to enter into a written stipulation, to be signed by the defendant, the defendant's attorney of record, and the prosecutor, under which the defendant would be obligated to adhere to certain conditions that would "be similar in all respects to conditions permitted as part of probation." This statute further required that any such stipulation must provide that "upon a breach by the defendant of any

10

condition regulating [his or her] conduct, the court shall enter judgment and impose sentence upon the guilty plea." § 18-1.3-102(2). The prosecutor or a probation officer could apply for the entry of such a judgment and the imposition of sentence "at any time within the term of the deferred judgment or within thirty-five days thereafter." Id. On the application of the prosecutor or probation officer, the court, without a jury, would determine by a preponderance of the evidence whether the defendant had breached any of the pertinent conditions. Id.

¶26 The above-described deferral period could be extended, but only in limited circumstances. See Carbajal I, 198 P.3d at 106. Specifically, as pertinent here, the court could extend the deferral period for up to 180 days if (1) the failure to pay restitution was the sole condition of supervision that had not been fulfilled, (2) that failure was based on the defendant's inability to pay, and (3) the defendant had shown a future ability to pay. § 18-1.3-102(1)(b). During this extension, the court could place the defendant under the supervision of the probation department. Id.

¶27 If the defendant either fully complied with the conditions of supervision or served the full term of his or her deferred judgment supervision without revocation or extension, then the deferred sentencing statute provided that "the plea of guilty previously entered shall be withdrawn and the charge upon which the judgment and sentence of the court was deferred shall be dismissed with prejudice." § 18-1.3-102(2); accord Carbajal I, 198 P.3d at 106.

¶28 In light of the foregoing, on October 2, 2013, when the district court granted the People's motion to withdraw their timely filed (albeit six-year-old) revocation

11

complaint and ordered that "probation be terminated," the deferred judgment statute provided for the withdrawal of Pineda-Liberato's guilty plea and the dismissal with prejudice of the underlying theft charge. See People v. Simonds, 113 P.3d 762, 764 (Colo. 2005) (noting that a district court retains jurisdiction to rule on a timely filed application for entry of judgment and imposition of sentence beyond the expiration of the deferral term unless the application had been deemed abandoned, but adding that "a failure to rule cannot be interminable without the motion or application being deemed abandoned").

¶29 Given the completion of Pineda-Liberato's deferred sentence, the withdrawal of her guilty plea, and the dismissal "with prejudice" of the underlying theft charge, see § 18-1.3-102(2), the question becomes whether the district court retained the authority to continue to collect from Pineda-Liberato the restitution, court costs, and fees remaining due at the time of the dismissal.

### 2. Restitution

¶30 Pineda-Liberato argues that, contrary to the district court's January 3 order, neither the district court nor Rent-A-Center has ongoing authority to collect the $815.95 in unpaid restitution that remained after the completion of her deferred judgment, which triggered the withdrawal of her guilty plea and the dismissal with prejudice of the underlying theft charge.

¶31 Section 18-1.3-603 governs restitution orders and the assessment of restitution. It begins with the mandate, "Every order of conviction of a felony . . . shall include consideration of restitution." § 18-1.3-603(1). Section 18-1.3-602(2) defines "conviction"

12

for purposes of section 18-1.3-603 to include "having received a deferred judgment and sentence or deferred adjudication; except that a person shall not be deemed to have been convicted if the person has successfully completed a deferred sentence or deferred adjudication." Consistent with these statutes, the court ordered, and Pineda-Liberato agreed to pay, restitution to Rent-A-Center.

¶32 Section 18-1.3-603 also specifically addresses the lifespan of a restitution order. At all times pertinent to this case, that statute provided, "Any order for restitution entered pursuant to this section is <u>a final civil judgment</u> in favor of the state and any victim. <u>Notwithstanding any other civil or criminal statute or rule, any such judgment remains in force until the restitution is paid in full</u>." § 18-1.3-603(4)(a) (emphasis added).

¶33 In our view, by providing that a restitution order is a "final civil judgment" that "remains in force until restitution is paid in full," the plain language of section 18-1.3-603(4)(a) makes clear that if necessary, such an order remains in effect beyond the completion of a deferred judgment: the order remains in force until restitution is paid in full, and a court, of course, has the authority to enforce such a pending order. See <u>In the Interest of J.E.S.</u>, 817 P.2d 508, 513 (Colo. 1991) (agreeing that a court with jurisdiction over a matter has the requisite power to enforce its orders and that a court may not be placed in a situation in which it lacks the authority to do so). Consequently, we conclude that the district court retained the authority to collect the $815.95 in restitution that Pineda-Liberato still owes to Rent-A-Center.

¶34    This conclusion not only is consistent with the plain language of the restitution statute, but also it is consistent with the purposes of both restitution and deferred sentencing.

¶35    The legislative declaration to the restitution statute provides that the statute "shall be liberally construed" to accomplish the statute's purposes, which include (1) rehabilitating offenders; (2) deterring future criminality; and (3) lessening the financial burdens inflicted on crime victims and their families, compensating them for their suffering and hardship, and preserving the victims' individual dignity. § 18-1.3-601(1)(c)–(e), C.R.S. (2017). The legislative declaration further provides, "It is the intent of the general assembly that restitution be ordered, collected, and disbursed to the victims of crime and their immediate families." § 18-1.3-601(2). These purposes would be undermined were Pineda-Liberato allowed to avoid her restitution obligation as she seeks to do here.

¶36    The purpose of deferred sentencing, in turn, is to give courts the power to impose alternative sentences that benefit a defendant when the interests of justice would be served thereby. See People v. Darlington, 105 P.3d 230, 235 (Colo. 2005). This purpose, too, would be subverted were we to allow Pineda-Liberato to reap the benefits of her deferred sentencing agreement while avoiding her restitution obligations thereunder.

¶37    In our view, our conclusion in this case properly gives effect to the statutory language and legislative purposes underlying both restitution and deferred sentencing.

14

¶38　Our conclusion today is also consistent with both sections 18-1.3-102(b)(1) and 18-1.3-603(4)(a).  Section 18-1.3-102(b)(1) authorizes a limited extension of the deferral period to allow the defendant to fulfill his or her restitution obligation and permits the court to "place the defendant under the supervision of the probation department" during the extension.  Under this provision, beyond the 180-day maximum term of such an extension, the court may no longer bind the defendant to probationary-like supervision conditions.  See Carbajal I, 198 P.3d at 106 (explaining that section 18-1.3-102(1)–(2) requires a felony "deferred judgment" to start the day that the defendant enters his or her plea and, unless the deferral period is extended pursuant to the statute, to end four years later).  Section 18-1.3-603(4)(a), however, makes clear that a restitution order, unlike such probationary-like supervision conditions, remains in force until restitution is paid in full.

¶39　Construing these provisions to give meaning to both, as we must do under our rules of statutory construction, see Doubleday, ¶ 20, 364 P.3d at 196, we conclude that section 18-1.3-102(b)(1) precludes a court from binding a defendant to probationary-like supervision conditions beyond the maximum term of the deferral period (as extended if pertinent) but that a restitution order, which statutorily remains in force, is an exception to this prohibition.  Were we to construe section 18-1.3-102(b)(1) to preclude a court from enforcing a restitution order upon the termination of a deferred sentence, then we would fail to give meaning to section 18-1.3-603(4)(a)'s mandate that restitution orders remain in force until restitution is paid in full.  We cannot, however, interpret statutory

15

provisions so as to render any of their words or phrases meaningless or superfluous. See Doubleday, ¶¶ 19–20, 364 P.3d at 196.

¶40     We are not persuaded otherwise by Pineda-Liberato's argument that Carbajal II requires a different result. Carbajal II involved what the division described as "a record of unique and very unusual circumstances," Carbajal II, ¶ 2, 312 P.3d at 1185, and a recitation of those unique facts is necessary to understand our disagreement with Pineda-Liberato's interpretation of that case.

¶41     In Carbajal II, the defendant received what the court labeled a "deferred judgment" in connection with a sexual assault charge. Id. at ¶ 4, 312 P.3d at 1185. The deferred judgment was subject to a number of conditions, including registration as a sex offender during the deferral period, completion of sex-offender treatment, and the payment of restitution. Id. The district court, however, set the deferred judgment period to begin after the defendant had completed a four-year prison term on a separate charge and then extended the deferral period for two additional years by accepting the parties' stipulation for a new condition of supervision, thereby effectively restarting the deferral period. Id. at ¶¶ 4, 8, 312 P.3d at 1185.

¶42     In Carbajal I, 198 P.3d at 104, we concluded that the district court had exceeded its jurisdiction by taking multiple actions to extend the defendant's deferred judgment "well beyond the statutory limits." We thus directed the district court to dismiss the defendant's deferred judgment. Id. at 107.

¶43     Thereafter, the defendant filed a petition to discontinue his sex-offender registration. Carbajal II, ¶ 18, 312 P.3d at 1187. The district court denied this petition,

16

noting, among other things, that (1) the defendant had not shown that he had completed sex-offender treatment; (2) he still owed restitution, costs, and fees; and (3) the court had discretion regarding whether to discontinue his registration, and even though the defendant's deferred judgment had been dismissed, the defendant had not proved that he had successfully completed certain conditions associated with it. Id. at ¶¶ 25–27, 312 P.3d at 1188. The defendant then appealed, and in Carbajal II, the division reversed the district court's ruling regarding the defendant's motion to discontinue his sex-offender registration. Id. at ¶ 59, 312 P.3d at 1192.

¶44 The division construed Carbajal I to mean that the defendant's deferred judgment had terminated as a matter of law four years after he had pleaded guilty. Id. at ¶ 49, 312 P.3d at 1191. According to the division, that implied that all of the probationary obligations associated with the deferred judgment, including the requirements to complete sex-offender treatment and to pay restitution, also ended at that time. Id. The defendant's duty to register as a sex offender, however, remained, and to discharge that obligation, he had to petition the district court for discontinuance, which he did, albeit unsuccessfully. Id.

¶45 The division ultimately concluded that the district court had abused its discretion in denying the defendant's petition to discontinue sex-offender registration because, in so ruling, the court had relied on, among other things, the defendant's failures to complete sex-offender treatment and to pay restitution. Id. at ¶¶ 51–53, 312 P.3d at 1191. The division observed that the pertinent statutes assumed that a deferred judgment had to be successfully completed before it could be dismissed. Id. at

17

¶ 51, 312 P.3d at 1191. The case at bar, however, was "unique" because the deferred judgment had been dismissed by direction of the supreme court because of errors by the district court, without any express determination that the defendant had successfully completed the conditions of the deferred judgment. Id. at ¶ 52, 312 P.3d at 1191. In addition, because, as a matter of law, the defendant was no longer subject to the probationary-like conditions of the deferred judgment, the division concluded that it was improper for the district court to rely on those conditions as grounds to deny the defendant's discontinuance petition. Id.

¶46 Based on the Carbajal II division's interpretation of Carbajal I to mean that the termination of a deferred sentence also terminates all of the probationary obligations associated with the deferred sentence, including the requirement to pay restitution, id. at ¶ 49, 312 P.3d at 1191, Pineda-Liberato contends that her obligation to pay restitution ended with the completion of her deferred sentence. For several reasons, we disagree.

¶47 First, as noted above, Carbajal II involved the narrow question of whether, under the unique circumstances presented there, a defendant's obligation to register as a sex offender as a condition of a deferred sentence continued after the dismissal of that deferred sentence. Accordingly, the division's statement about the defendant's restitution obligation was dicta.

¶48 Second, unlike Carbajal II, the instant case squarely presents the question of whether a restitution obligation imposed as a condition of a deferred sentence survives the completion of that deferred sentence. For the reasons set forth above, our review of the pertinent statutes persuades us that the obligation to pay restitution as a condition

18

of a deferred sentence does continue in such circumstances. To the extent that the dicta in Carbajal II suggests otherwise, we now disavow it.

¶49 We likewise are unpersuaded by Pineda-Liberato's argument that by clarifying the law in this area following Carbajal II, the General Assembly implicitly confirmed that division's interpretation of the statutes as they existed prior to the 2014 amendments. We perceive no such legislative affirmation or intent.

¶50 Effective March 7, 2014, the General Assembly added section 16-18.5-111, which states, "The provisions of this article [governing restitution in criminal actions] apply notwithstanding the termination of a deferred judgment and sentence or a deferred adjudication." See H. 14-1035, 69th Gen. Assemb., 2d Reg. Sess. (Colo. 2014); ch. 21, sec. 1, § 16-18.5-111, 2014 Colo. Sess. Laws 152. At the same time, the legislature amended section 18-1.3-603(4)(a) to provide, "The provisions of article 18.5 of title 16, C.R.S. [governing restitution in criminal actions], apply notwithstanding the termination of a deferred judgment and sentence or a deferred adjudication." See H. 14-1035, 69th Gen. Assemb., 2d Reg. Sess. (Colo. 2014); ch. 21, sec. 2, § 18-1.3-603(4)(a), 2014 Colo. Sess. Laws 152.

¶51 These provisions make clear that as of March 7, 2014, restitution orders ancillary to deferred sentences survive the termination of those deferred sentences and remain in effect until they are paid in full. Moreover, contrary to Pineda-Liberato's assertions, the legislative history of these amendments evinces the General Assembly's unmistakable disagreement with and intent to overrule the division's judgment in Carbajal II. See, e.g., Restitution Collection Deferred Judgment: Hearing Before the House Judiciary

19

Committee, 69th Gen. Assemb., 2d Reg. Sess., at 1:04:39 (Colo. Jan. 23, 2014) (statement of Rep. Gardner), http://coloradoga.granicus.com/MediaPlayer.php?view_id=21&clip_id=4749 ("Everyone in Colorado, except perhaps the court of appeals, believed that what this [section 18-1.3-603(4)(a)] meant and what the legislature had been very clear about was, 'You are going to pay your restitution.'").

¶52    In these circumstances, we cannot agree with Pineda-Liberato's suggestion that the 2014 amendments implicitly confirmed the Carbajal II division's interpretation of the pre-2014 statutory language.

### 3. Court Costs and Fees

¶53    Turning to the question of court costs and fees, the People argue that, contrary to the district court's January 13 order, that court had statutory authority to collect unpaid court costs and fees after the completion of Pineda-Liberato's deferred sentence. We disagree.

¶54    As noted above, Pineda-Liberato's deferred sentence included, as a probationary-like condition of supervision, the requirement that she pay court costs and fees totaling $1572.50, which comprised six categories: (1) victim compensation costs, (2) a victim assistance surcharge, (3) a time payment fee, (4) a supervision fee, (5) a docket fee, and (6) a public defender fee. That amount later grew to $1905.25 when, a month after terminating Pineda-Liberato's deferred sentence, the court ordered her to pay an additional $520.25 in "transport fees" into the registry of the court. With respect to each of the initial six categories of fees and costs, the People point to a statute that,

they contend, authorizes the court to collect the fee or cost after the completion of a deferred sentence.[2] We address each of these statutes in turn.

¶55 First, at the time that the district court imposed Pineda-Liberato's deferred sentence, section 24-4.1-119(1)(a), C.R.S. (2006), levied a cost of $125 per felony on "each criminal action resulting in a conviction or in a deferred judgment and sentence." Pursuant to that statute, the clerk of court was required to collect the charge and transmit it to the court administrator in the judicial district in which the offense occurred for credit to that district's crime victim compensation fund. § 24-4.1-119(1)(a).

¶56 Second, the version of section 24-4.2-104(1)(a)(I), C.R.S. (2006), in place at the time that the district court imposed Pineda-Liberato's deferred sentence provided for a separate "surcharge" in the amount of $162.50 per felony for "each criminal action resulting in a conviction or in a deferred judgment and sentence." The statute required the court administrator of the judicial district in which the offense occurred to credit the money to the district's "victims and witnesses assistance and law enforcement fund." § 24-4.2-104(1)(a)(I).

¶57 Third, because Pineda-Liberato did not pay the costs, fees, and restitution that she owed on the day that they were assessed, section 16-11-101.6(1), C.R.S. (2017), required that she be assessed "an additional time payment fee" of $25. The statute further provides that all time payment fees collected "shall be credited to the judicial collection enhancement fund" located in the state treasury. § 16-11-101.6(2).

---

[2] The People do not separately discuss the transport fees, and neither does Pineda-Liberato.

21

¶58     Fourth, section 18-1.3-204(2)(a)(V), C.R.S. (2017), allows courts to require that probationers pay "reasonable" costs of supervision, and it sets the probation supervision fee at $50 per month for the length of the ordered probation.

¶59     Fifth, the pertinent version of section 13-32-105(1)(a)–(b), C.R.S. (2017), mandated that at the time of the first appearance of the defendant in a district court criminal action, "there shall be charged against the defendant a total docket fee of [$35], which shall be payable upon conviction of the defendant."  As the People acknowledge, this statute does not define the term "conviction," nor does it specifically mention deferred judgments and sentences.  The People contend, nevertheless, that "in its general, ordinary legal sense," the term "conviction" means the "entry of a guilty plea and not entry of the judgment of conviction."

¶60     Finally, section 21-1-103, C.R.S. (2017), provides for the representation of indigent persons by the state public defender.  When a defendant applies for representation by the public defender and the public defender enters an appearance based on the application, section 21-1-103(3) imposes on the defendant a "nonrefundable processing fee" of $25.  Processing fees collected pursuant to this statute "shall be transmitted to the state treasurer, who shall credit the same to the general fund."  § 21-1-103(3).

¶61     None of these provisions contains language akin to that contained in the restitution statute, section 18-1.3-603(4)(a), which makes clear that an obligation to pay restitution survives the completion of a deferred sentence and the dismissal of the underlying charges.

22

¶62 Nor does section 16-11-101.6, which, among other things, governs the collection of all of the foregoing costs and fees, contain such language. That statute (1) authorizes the state to "employ any method available to collect state receivables," § 16-11-101.6(3), and (2) allows the court, on its own motion or through the use of a collections investigator, to "direct that a certain portion of a defendant's earnings[] . . . be withheld and applied to any unpaid fines or fees," § 16-11-101.6(4)(a). Although these provisions authorize courts to collect past due fines and fees, they neither provide for the survival of such orders after the dismissal of a deferred sentence nor address in any way the lifespan of such orders. See § 16-11-101.6(3)–(4).

¶63 As section 18-1.3-603(4) makes clear, the legislature knew how to provide for the survival of such orders after the dismissal of a deferred sentence. It specifically did so for restitution orders. See § 18-1.3-603(4) (expressly stating that a restitution order is "a final civil judgment" and that "[n]otwithstanding any other civil or criminal statute or rule, any such judgment remains in force until the restitution is paid in full"). Given that the legislature did not include similar language in the above-quoted statutes concerning costs and fees, we conclude that unlike restitution, the court costs and fees that remained due after the completion of Pineda-Liberato's deferred sentence did not survive the termination of that sentence and the dismissal of the charges against her.

¶64 We therefore conclude that the unpaid court costs and fees at issue are no longer subject to collection by the district court.

23

# III. Conclusion

For these reasons, we conclude that the district court retains the authority to collect the unpaid restitution that remained after the completion of Pineda-Liberato's deferred sentence but that the court does not retain the authority to collect the unpaid court costs and fees remaining at that time.

Accordingly, we affirm in part and reverse in part the district court's orders, and we remand this case to that court for further proceedings consistent with this opinion.

**JUSTICE COATS** concurs in part and dissents, and **JUSTICE EID** joins the concurrence in part and dissent in part.

JUSTICE COATS, concurring in part and dissenting in part.

¶67    I disagree with the majority's conclusion that the pertinent, pre-2014 statutes of this jurisdiction permitted district courts to collect any unpaid restitution stipulated as a condition of deferring judgment and sentence for a crime, even after the defendant's conditional guilty plea has been successfully withdrawn and the charges against him dismissed with prejudice.  In fact, I not only disagree with the majority's construction but would reject it as the product of a concededly result-driven analysis, requiring "liberal," rather than simply "reasonable," construction to accomplish what the majority considers to be the purposes of the statute.  I therefore respectfully dissent from that aspect of the court's judgment.

¶68    In some 22 paragraphs the majority determines that this result is dictated by the "plain language" of the restitution statute, as it existed prior to a 2014 amendment expressly adding language to sanction this very result, when that statute is "liberally construed to accomplish the statute's purposes"; and that neither this court nor the court of appeals has ever construed the pre-2014 restitution statute in a manner inconsistent with this result.  While I take issue with a number of key aspects of both the majority's method of construing statutes and its characterization of the prior holdings of this court, I consider it sufficient justification for dissenting from the majority's conclusion in this case that the whole of its analysis rests on a fundamental misconception about the nature of a statutorily sanctioned deferred judgment, and as a result of that misconception, its erroneous presumption that by deferring entry of a judgment of conviction, subject to compliance with stipulated conditions including a

1

stipulation to pay restitution, the trial court issues an "order of restitution" as contemplated by section 18-1.3-603(4)(a) of the Colorado Revised Statutes.

¶69 As we have made painfully clear in our prior case law, a trial court lacks the authority to impose a deferred judgment except as authorized by statute. People v. Carbajal, 198 P.3d 102, 105–106 (Colo. 2008). Once a defendant pleads guilty to a felony, the deferred judgment statute, section 18-1.3-102, allows the court, with the defendant's written consent and stipulation to conditions, to continue his case for a prescribed period without entering judgment, and although this deferral can be revoked—and judgment then entered and sentence imposed—for a violation of the "probation-like conditions" of his deferral agreement, if the prescribed period is allowed to pass without revocation or a statutorily permitted extension, his guilty plea must be withdrawn and the charges dismissed with prejudice to any further prosecution for that offense. Id. Both technically and conceptually, a deferred judgment is therefore not a judgment of conviction at all but rather a continuance with "probation-like supervision conditions." Id.

¶70 Although the majority perpetually refers to the defendant's "deferred sentencing," as if the entry of a judgment of conviction were not also statutorily deferred, it nevertheless appears to accept this characterization with one exception—the condition of the deferred judgment stipulation that the defendant pay a specified amount of restitution. The majority reasons that because the restitution statute, section 18-1.3-603, provides that "(a)ny order of restitution" is a final civil judgment and that "any such judgment" remains in force until the restitution is paid in full, a restitution

2

condition of a deferred judgment agreement must remain in force notwithstanding provisions of the deferred judgment statute expressly to the contrary. Because deferral of a judgment and sentence does not, however, constitute the conviction of any crime against the purported victim and, unless a breach is proved according to the statutory procedures and burdens within the prescribed time period, can never become a conviction for committing the charged offense, a stipulated condition for deferral cannot be an "order of restitution" or "civil judgment" against the defendant within the contemplation of the statute. Like all of the other conditions of the stipulation, it is merely a condition the breach of which subjects the defendant to entry of judgment on his conditional guilty plea, but the successful completion of which requires that the defendant's conditional guilty plea be withdrawn and any prosecution of him for the charged offense against the victim be forever barred.

¶71 With regard to the former eventuality, the statute provides in detail the process due a defendant before judgment may enter on his plea and before any sentence, including an "order of restitution" as required upon conviction, may be imposed. With regard to the latter eventuality, the statute is similarly clear that in the absence of proof of a breach of the stipulation, according to the prescribed process and within the prescribed time period, the conditions of the deferred judgment stipulation are deemed successfully completed, and the defendant's conditional plea must be withdrawn and the charges dismissed. With regard to the restitution condition in particular, the statute specifically provides for a 182-day extension of the period of deferral, but no longer, in the event that a failure to pay restitution, as the result of the defendant's inability to

3

pay, is the sole unfulfilled condition of supervision. Unless the prosecution or probation department moves for an entry of judgment and imposition of sentence within the term of deferral or within 35 days thereafter, the defendant can never be held criminally accountable for committing the charged offense against the alleged victim, and therefore cannot suffer the "order of restitution" mandated upon every order of criminal conviction.

¶72 An order of restitution, as defined and imposed by part 6 of article 1.3, title 18 of the revised statutes prior to 2014, was dependent upon an "order of conviction of a felony, misdemeanor, petty, or misdemeanor traffic offense." § 18-1.3-603, C.R.S. (2013). While a deferred judgment necessarily includes a conditional admission, subject to stipulated conditions, unless it was revoked according to the process statutorily required, it was not, and could never become, a conviction of any one of these crimes. The merits of requiring someone to stipulate to the entry of a civil judgment against himself in order to avoid the threat of criminal prosecution, a matter with clear ethical implications for the practice of law, may become the subject of debate following the 2014 amendments, but they are not at issue under the applicable scheme. Under the pre-2014 deferred judgment and restitution provisions, the requirements of a judgment of conviction, imposition of sentence, and proof of restitution were clear and did not permit an order of restitution without their having been satisfied.

¶73 For these reasons I respectfully concur in part and dissent in part.

I am authorized to state that JUSTICE EID joins in this concurrence in part and dissent in part.

4