**SUNCOM MOBILE & DATA, INC., Petitioner,**

v.

**FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents.**

**Roamer One, Inc., et al., Intervenors.**

**No. 95–1478.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 9, 1996.

Decided July 9, 1996.

Thomas Gutierrez, Washington, D.C., argued the cause, for petitioner. David LaFuria and J. Justin McClure, were on brief.

Susan L. Fox, Counsel, Federal Communications Commission, Washington, D.C., argued the cause, for respondents. William E. Kennard, General Counsel, Daniel M. Armstrong, Associate General Counsel, John E. Ingle, Deputy Associate General Counsel, Anne K. Bingaman, Assistant Attorney General, U.S. Department of Justice, Catherine G. O'Sullivan, and Andrea Limmer, attorneys, were on brief. Laurel R. Bergold, Counsel, entered an appearance.

David J. Kaufman, Washington, D.C., argued the cause, for intervenors. William J. Franklin, was on brief. Scott C. Cinnamon and Thomas J. Keller entered appearances.

Before: WALD, SENTELLE and HENDERSON, Circuit Judges.

KAREN LeCRAFT HENDERSON, Circuit Judge.

Petitioner SunCom Mobile & Data, Inc. (SunCom) challenges rulings by the Federal Communications Commission (Commission) that SunCom claims impede its proposal for a wide-area, multiple station 220 MHz band transmission network. SunCom's plan, as described to the Commission, was to aggregate at some future date various 220 MHz stations then licensed to other parties and, at least in part, not yet built. To this end, SunCom filed requests with the Commission on February 1, 1994 for (1) a declaration that the network, as proposed, complied with the Commission's "40–mile" rule, which prohibits a single licensee from holding more than one 220 MHz license within a 40–mile area unless "justified on the basis of its communications requirements", 47 C.F.R. § 90.739,[1] and (2) a waiver of the Commission's eight-month construction deadline for 220 MHz licenses, 47 C.F.R. § 90.725(f).[2] The Commission denied both of the requests, concluding that a declaration of compliance would be premature because SunCom could not demonstrate justifying "communications requirements" for licenses that were not yet operational (and might not be for five years) and that the waiver was not warranted by any special circumstances. *See* Second Memorandum Opinion and Order, 11 F.C.C.R. 188, 201, 276–77, 278–83 (Released Aug. 28, 1995) (denying motion for reconsideration of Commission's first Memorandum Opinion and Order, 9 F.C.C.R. 7988, 8053–56 (Released Sept. 23, 1994)). SunCom petitions for review of the denials. We conclude that SunCom has failed to establish standing under Article III of the United States Constitution to seek review of the Commission's rulings.

■ "In order to establish standing under Article III, a complainant must allege (1) a *personal injury-in-fact* that is(2) 'fairly traceable' to the defendant's conduct and (3) redressable by the relief requested." *Branton v. FCC*, 993 F.2d 906, 908 (D.C.Cir.1992)

1. Section 90.739 provides:

> No licensee will be authorized more than one system in the 220–222 MHz band in a single category (i.e., one non-commercial nationwide system [either 5 or 10–channel], one commercial nationwide system, one 5–channel trunked system, one data-only local system of 1–5 channels, one unrestricted non-trunked local system of 1–5 channels, or one public safety/mutual aid local system of 1–5 channels) within 64 kilometers (40 miles) of an existing system authorized to that licensee in the same category, unless the licensee can demonstrate

that the additional system is justified on the basis of its communications requirements.
47 C.F.R. § 90.739.

2. This subsection provides:

> (f) Licensees authorized non-nationwide systems must construct their systems (i.e., have all specified base stations constructed with all channels) and place their systems in operation within eight months of the initial license grant date. Authorizations for systems not constructed and placed in operation within eight months from the date of initial license grant cancel automatically.
47 C.F.R. § 90.725(f).

(quoting *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324–25, 82 L.Ed.2d 556 (1984)), *cert. denied,* —— U.S. ——, 114 S.Ct. 1610, 128 L.Ed.2d 338 (1994). The burden rests on the party seeking judicial review "clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Warth v. Seldin,* 422 U.S. 490, 518, 95 S.Ct. 2197, 2215, 45 L.Ed.2d 343 (1975). "If he fails to make the necessary allegations he has no standing." *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). SunCom has so failed.

At the time SunCom filed the requests, it had no 220 MHz licenses of its own but only "written expressions of interest from parties holding approximately [450 licenses]," none of which was identified in SunCom's filings. JA 26. SunCom represented to the Commission that it intended to obtain title to the network licenses "only after they are constructed . . . and upon receipt of all applicable FCC approval." JA 2. In fact, according to SunCom, it was only after Commission approval of its requests that SunCom intended to "proceed . . . to secure the participation of . . . licensees in the network," *id.* at 26, and that "SunCom and its potential shareholders" planned to "mak[e] commitments to the Network," *id.* at 2. These allegations fail to show the required "injury-in-fact," namely, "an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not "conjectural" or "hypothetical," ' " *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (citations omitted). SunCom alleged no actual, existing interest in the licenses for which it made the two requests nor even a contract to acquire such but only an intent to purchase unidentified licenses sometime in the future, after FCC approval and station construction. Based on the allegations before the Commis-

sion, we see no likelihood that SunCom stood to suffer the kind of concrete, probable harm from the Commission's denials that Article III requires. *Cf. Energy Transp. Group, Inc. v. Maritime Admin.,* 956 F.2d 1206, 1215 (D.C.Cir.1992) (finding that "competitive injury" to shipping company from Maritime Administration's sale of tankers to other company, which required tankers to be used to transport liquified natural gas into United States, was "too speculative to satisfy Article III's requirement that the injury be 'distinct and palpable,' " where challenging shipper, although "involved in negotiations with potential [liquified natural gas] suppliers," "d[id] not claim to have made any arrangements for supply or to have acquired access to any of the existing (privately-owned) U.S. port facilities suitable for [liquified natural gas] importation"); *Public Citizen v. Lockheed Aircraft Corp.,* 565 F.2d 708, 717–19 (D.C.Cir.1977) (economic injury claimed by industrial machinery dealers represented by trade association challenging sale of property by General Services Administration to private company—loss of members' opportunities to sell their own property to purchaser or to purchase one of plants sold—was "too speculative" where association "claimed only that its members were interested in purchasing 'some of the property sold to [the purchaser]' " and there was no evidence of "any existing relationship between [purchaser and members] which would require [purchaser] to buy from them as opposed to buying from non-members" nor any "demonstration that its members presently participate in or contemplate participation in a viable business project which had adequate resources and an existent intent to purchase property such as [that claimed]").

■ Given SunCom's deficient allegations before the Commission, the court, *ex mero motu,* requested supplemental briefs on standing to be submitted after oral argument.[3] In a belated attempt to show the

---

**3.** Neither the Commission nor the intervenors challenged SunCom's Article III standing to petition for review of the Commission's decision (although the intervenors' brief questioned SunCom's standing to file its requests with the Commission in the first instance, *see* Brief for Intervenors at 17 n.17). Nevertheless, we are bound to

conduct an independent inquiry on our own. "Standing, whether constitutional or prudential, is a jurisdictional issue which cannot be waived or conceded." *Animal Legal Defense Fund, Inc. v. Espy,* 29 F.3d 720, 723 n. 2 (D.C.Cir.1994) (citing *Animal Legal Defense Fund, Inc. v. Espy,* 23 F.3d 496, 498 (D.C.Cir.1994); *id.* at 504

requisite stake and injury for standing, Sun-Com attached to its supplemental brief sample option and management agreements it alleges were entered with over 400 licensees.[4] To no avail. Assuming, as SunCom asserts in its brief, that the agreements imposed binding obligations on the parties,[5] they nevertheless do not establish standing to challenge the Commission's rulings. SunCom alleges the agreements existed "as of ... November 1, 1995," Supplemental Brief for Petitioner app. E at 1, but does not indicate when they were entered. Significantly, Sun-Com does not allege that any of them were in effect before the Commission released its final rulings on August 28, 1995. In the absence of such agreements at that time, and the interests SunCom claims they conferred, we do not see how the Commission's rulings could have been the cause of SunCom's alleged injury, as required under Article III. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136–37, 119 L.Ed.2d 351 (1992) ("[T]here must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the defendant ....' ") (quoting *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1925–26, 48 L.Ed.2d 450 (1976)). In fact, SunCom has failed to allege that any of the contracts existed when it filed its petition for review here on September 15, 1995, a critical time for Article III standing analysis. *See Payne v. Travenol Labs., Inc.,* 565 F.2d 895, 898 (5th Cir.1978) (" '[T]he necessary requirement is for a named plaintiff to have standing at the time the litigation is filed.' ") (quoting *Thurston v. Dekle,* 531 F.2d 1264, 1269–70 (5th Cir.1976)), *cert. denied,* 439 U.S. 835, 99 S.Ct. 118, 58

L.Ed.2d 131 (1978); *see also Sosna v. Iowa,* 419 U.S. 393, 402, 95 S.Ct. 553, 558–59, 42 L.Ed.2d 532 (1975).

Because SunCom has failed to allege facts demonstrating Article III standing, the petition for review is

*Denied.*

---

(Williams, J. concurring in part and dissenting in part); *Mallick v. International Bhd. of Elec. Workers,* 749 F.2d 771, 773 n. 1 (D.C.Cir.1984)).

**4.** This court has in the past permitted parties to supplement the record during a judicial proceeding to establish standing. *See National Wildlife Fed'n v. Burford,* 878 F.2d 422 (D.C.Cir.1989) ("The law of this circuit allows plaintiffs to supplement the record to cure alleged defects on standing.") (citing *National Wildlife Fed'n v. Hodel,* 839 F.2d 694, 703 (D.C.Cir.1988), *reversed on other ground sub nom. Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

**5.** Apparently, SunCom's practice has been to "release" dissatisfied licensees from their "commitments." *See* Supplemental Brief for Petitioner app. E at 1 ("Approximately 30 of the below listed licenses were released before [November 1, 1995], because or principally because SunCom hadn't obtained a grant of its petition to the FCC for a multi-year network construction authorization.... After [November 1, 1995], approximately one hundred of the below listed licensees were released....").