**FREE AIR CORPORATION, Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

James S. Lee, et al., Intervenors.

No. 96–1311.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 20, 1997.

Decided Nov. 12, 1997.

Stephen T. Yelverton argued the cause and filed the briefs for appellant.

David Silberman, Counsel, Federal Communications Commission, argued the cause for appellee. With him on the brief were William E. Kennard, General Counsel, and Daniel M. Armstrong, Associate General Counsel.

Before: SILBERMAN, WILLIAMS and ROGERS, Circuit Judges.

STEPHEN F. WILLIAMS, Circuit Judge:

Free Air Corporation, Bernard Dawson, and thirteen others applied to the Federal Communications Commission for an FM radio broadcast license in Raleigh, North Carolina. In 1995 Free Air's application was dismissed with prejudice for failure to prosecute, a dismissal which Free Air appealed through the judicial system without success. Meanwhile, the field having been winnowed to five applicants, those five entered into settlement agreements that would give the license to a newly formed company headed by Dawson in exchange for payments by Dawson's firm to the other four. The Commission approved both Dawson's reorganization and the settlement plan; now Free Air wants to challenge that approval. Because Free Air lacks standing, we dismiss the appeal.

\*　　\*　　\*

Free Air filed its initial application for the Raleigh channel in July 1986. In September

1994 the FCC's Review Board ordered an administrative law judge ("ALJ") to hold a hearing on Free Air's financial eligibility. *Rem Malloy Broadcasting,* 9 F.C.C.R. 4822, 4827–30 (Rev. Bd.1994). After Free Air failed to show up at the hearing or offer any evidence on its finances, the Commission dismissed its application with prejudice for failure to prosecute. *Rem Malloy Broadcasting, Memorandum Opinion and Order,* FCC95M–60 (ALJ, Feb. 23, 1995), *appeal denied,* 10 F.C.C.R. 4974 (Rev. Bd.1995), *review denied,* 10 F.C.C.R. 9502 (1995). We summarily affirmed the dismissal and the Supreme Court denied certiorari. *Free Air Corp. v. FCC,* No. 95–1490 (D.C.Cir., Nov. 9, 1995), *cert. denied,* —— U.S.——, 118 S.Ct. 46, —— L.Ed.2d —— (1997) (No. 96–1717).

After Free Air was dismissed, five applications remained, of which Dawson's was the only one not to have been denied by the ALJ. (The denials of the other four were not—and still are not—final, as those applicants have not exercised their rights to secure review by the full Commission.) See *Rem Malloy Broadcasting, Initial Decision,* 4 F.C.C.R. 8423 (ALJ 1989); *Supplemental Initial Decision,* 6 F.C.C.R. 2247 (ALJ 1991); *Further Supplemental Initial Decision,* 7 F.C.C.R. 8024 (ALJ 1992); *Second Further Supplemental Initial Decision,* 10 F.C.C.R. 9369 (ALJ 1995). In December 1995 Dawson petitioned the FCC for leave to amend his application to reflect the formation of Triangle FM Broadcasters, a limited liability company in which Dawson would hold a 51% ownership interest. The five survivors then all asked the FCC to approve a settlement agreement whereby Dawson's application (as amended to substitute Triangle for Dawson) would be granted and the other four would voluntarily dismiss their applications in return for payments from Triangle.

■ The Commission approved the settlement and granted Dawson's amended application. *Rem Malloy Broadcasting,* 11 F.C.C.R. 4064 (Rev. Bd.1996), *reconsideration denied,* 11 F.C.C.R. 10823 (1996). Free Air attacks the Commission's ruling, arguing

that Dawson did not show good cause to amend his application, made misrepresentations in connection with his amended application, and will not exercise the requisite control over the station. Free Air also accuses the FCC of violating its own procedural rules in dealing with Dawson's application. We do not address these claims, however, because of Free Air's lack of standing.[1]

■ To have standing under Article III of the Constitution, a litigant must allege an "injury in fact" fairly traceable to the challenged action and likely to be redressed by the requested relief. *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). The injury must not be "abstract," "conjectural" or "hypothetical." *Los Angeles v. Lyons,* 461 U.S. 95, 101–02, 103 S.Ct. 1660, 1664–65, 75 L.Ed.2d 675 (1983). And "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (internal quotes and citation omitted).

It is important to distinguish between the two separate challenges that have been brought by Free Air. The first was Free Air's challenge to the dismissal of its own application. The dismissal directly injured Free Air, removing it from the competition for the license, and a judicial decision overturning it and remanding for further proceedings would have redressed the injury. Thus, the dismissal presumptively established Article III standing. (Of course such an injury would amount to nothing if Free Air's application were so feeble that it obviously never had a chance—but even that is the sort of thing a court can normally decide only by reaching the merits. *Cf. Claybrook v. Slater,* 111 F.3d 904, 906–07 (D.C.Cir. 1997).) Free Air had every right to appeal its dismissal all the way to the Supreme Court—and it did so, to no avail.

Free Air's second challenge, however, is to decisions by the Commission concerning other competitors in a process from which Free

---

1. Because we find that Free Air lacks standing under Article III, it is unnecessary to address its statutory standing under 47 U.S.C. § 402(b)(6).

See, e.g., *SunCom Mobile & Data, Inc. v. FCC,* 87 F.3d 1386 (D.C.Cir.1996).

Air had been validly excluded. Its standing to challenge those decisions rests on a different and more tenuous ground, for the approval of the settlement and the accompanying grant of Dawson's application injure Free Air only in that they foreclose Free Air's opportunity to apply for the channel in the future.

Free Air relies on our decision in *Orange Park Florida T.V., Inc. v. FCC*, 811 F.2d 664 (D.C.Cir.1987), for its claim that its status as a rejected applicant is nonetheless enough to confer standing. There two firms—Orange Park and Clay—applied to the FCC for a permit to construct a television station. An administrative law judge denied Orange Park's application because its proposed antenna was too close to one already proposed in an application for a different channel. Rather than amend its application to fix the antenna spacing problem, Orange Park asked for a waiver of the FCC's spacing rules. The Commission denied the waiver request and found that Orange Park was not technically qualified to be a licensee. The ALJ had also initially rejected Clay's application because it proposed a major change in ownership structure. The Commission, however, ruled that the ownership-change rule should not have been applied to Clay. It permitted Clay to amend its application and remanded to the ALJ, who found Clay otherwise qualified and awarded it the permit as the sole surviving applicant. *Id.* at 667. Orange Park then challenged the Commission's grant of Clay's application. This court held that Orange Park had standing to attack the award.

Free Air says its situation is just like Orange Park's. We disagree. Unlike Orange Park, Free Air has been irrevocably ousted from the licensing contest in which it had been a participant. This court in *Orange Park* proceeded on the understanding that if the award to Clay were reversed, Orange Park could cure the defect in its application by a simple process of amendment. See, e.g., *Orange Park*, 811 F.2d at 671 ("Orange Park specifically alleges that dismissing Clay's application would have made it easier for Orange Park to amend its application to specify a fully-spaced site ... and that Orange Park was willing to make such an amendment had Clay's application been dismissed"); *id.* ("Orange Park ... was deprived by award to a competitor of the opportunity to cure the remediable defect in [its] initial application"). In short, but for the Commission's alleged error in allowing the winning applicant to make a curative amendment, Orange Park could have returned to the ongoing contest simply by making an amendment curing its only apparent deficiency. The grant to Clay injured Orange Park uniquely, because it denied Orange Park alone the opportunity to so amend.

By contrast, Free Air's application has been dismissed outright. It cannot get back into contention with a simple curative amendment; unlike Orange Park, it is truly on the outside looking in. Free Air's position is thus no better than that of any would-be first-time applicant complaining that the Commission's grant of a license deprives it of the opportunity that would arise if the license were to go ungranted and a new contest open to all comers were someday to be announced. It is true that the grant of a broadcasting license forecloses later opportunities to compete in a possible new licensing proceeding; we hold, however, that such a foreclosure is too speculative an injury for Article III standing.

It is true that the *Orange Park* decision contains language indicating that the denial of the opportunity to apply sometime in the future is a sufficient injury to create standing. See, e.g., 811 F.2d at 672 (Commission's grant "deprived Orange Park of a second chance to apply" for the permit); *id.* ("[V]acating the award to Clay will redress Orange Park's injury by affording it the opportunity to reapply for the construction permit, which Orange Park has indicated it stands ready, willing and able to do."). But since the grant of a license effectively denies the entire world the opportunity to apply at some later date, we read *Orange Park* more narrowly, as having located the Article III injury in the denial of Orange Park's opportunity to renew its participation in an ongoing licensing proceeding.

■ Free Air fares no better under our cases discussing the standing of disappointed

bidders for government contracts. See, e.g., *National Federation of Federal Employees v. Cheney*, 883 F.2d 1038, 1052–54 (D.C.Cir. 1989); *National Maritime Union v. Commander, Military Sealift Command*, 824 F.2d 1228, 1236–38 (D.C.Cir.1987); *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859 (D.C.Cir.1970). Those cases make clear that a disappointed bidder whose own application was within the zone of active consideration may seek judicial vindication of its right "to have its bid considered solely on its merits." *National Maritime Union*, 824 F.2d at 1237 (quoting *CACI, Inc.–Federal v. United States*, 719 F.2d 1567, 1575 (Fed.Cir.1983)).[2] In other words, sufficiently viable runners-up in a procurement process have standing to allege that an illegality in the process caused the contract to go to someone else and not to them. Here, however, Free Air is not a runner-up. It was removed from competition on the basis of a decision (challenged in court and upheld) wholly independent of the decisions leading to the award of the license.[3] The disappointed bidder cases do not give Free Air standing to challenge these entirely separate aspects of the licensing process.

The appeal is

*Dismissed.*

---

**2.** The "zone of active consideration" requirement is not applicable in its conventional form where the would-be bidder claims that an allegedly unlawful program has systematically reduced the range of contracts on which the would-be bidder could compete. See *Northeastern Fla. Chapter of Assoc. Gen. Contractors of America v. City of Jacksonville*, 508 U.S. 656, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993); *Dynalantic Corp. v. Department of Defense*, 115 F.3d 1012, 1014–17 (D.C.Cir.1997). Free Air makes no analogous claim here.

**3.** Free Air's lack of standing has nothing to do with the fortuity that there have been two separate lawsuits, one in which Free Air challenged the decision excluding it, and a second in which it attacks the Commission's other decisions awarding the license. The fatal factor—that the grant of the license to Dawson deprived Free Air only of a distant and speculative opportunity to reapply—would be present even if both challenges were brought together.