Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2021 CO 4**

**No. 20SC225, *Schaden v. DIA Brewing Co., LLC*—C.R.C.P. 15(a)—C.R.C.P. 59—C.R.C.P. 60—Amendments—Finality—Futility.**

This case requires the supreme court to determine whether, after a district court enters an order dismissing an action pursuant to C.R.C.P. 12(b)(1), C.R.C.P. 15(a) gives the plaintiff the right to amend its complaint as a matter of course and without leave of the court or the consent of the defendant, or whether such a dismissal results in a final judgment that cuts off the plaintiff's right to amend as a matter of course.

Reading C.R.C.P. 15(a) harmoniously with C.R.C.P. 59 and C.R.C.P. 60, the court now concludes that a final judgment cuts off a plaintiff's right to file an amended complaint as a matter of course under C.R.C.P. 15(a). Accordingly, because the dismissal order at issue constituted a final judgment, Plaintiff here did not have the right to amend its complaint as a matter of course but rather was obligated, if it wished to amend, to seek relief from the judgment and to file a

motion requesting leave to amend or indicating that Defendants had consented in writing to the filing of an amended complaint.

Nonetheless, in the circumstances presented, the court deems it appropriate to consider the viability of the amended complaint and now concludes, contrary to the district court, that that amended pleading is not futile but rather states viable claims for relief.

Accordingly, the supreme court affirms the judgment of the division below, albeit on different grounds, and remands this case with directions that the case be returned to the district court with instructions that the court accept Plaintiff's amended complaint for filing, after which Defendants may respond in the ordinary course.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2021 CO 4

### Supreme Court Case No. 20SC225
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 18CA2136

### Petitioners:

Richard Schaden; MCE-DIA, LLC, a Michigan limited liability company;
Midfield Concessions Enterprises, Inc. a Michigan limited liability company;
Andrea Hachem; Noureddine "Dean" Hachem; Samir Mashni; Simrae Solutions
LLC, a Colorado limited liability company; Sudan I. Muhammad; Pangea
Concessions Group LLC, a Florida limited liability company; Niven Patel; and
Rohit Patel,

v.

### Respondent:

DIA Brewing Co., LLC, a Colorado limited liability company.

### Judgment Affirmed
*en banc*
January 11, 2021

**Attorneys for Petitioner Richard Schaden:**
Haddon, Morgan and Foreman, P.C.
Saskia A. Jordan
Adam Mueller
  *Denver, Colorado*

**Attorneys for Petitioner MCE-DIA, LLC:**
Merchant & Gould P.C.
Peter A. Gergely
  *Denver, Colorado*

Woodrow & Peluso, LLC
Steven L. Woodrow
    *Denver, Colorado*

**Attorneys for Respondent:**
Law Office of G. Stephen Long
G. Stephen Long
    *Denver, Colorado*

Jones & Keller, P.C.
Christopher S. Mills
    *Denver, Colorado*

Connelly Law, LLC
Sean Connelly
    *Denver, Colorado*

No appearance on behalf of: Midfield Concessions Enterprises, Inc.; Andrea Hachem; Noureddine "Dean" Hachem; Samir Mashni; Simrae Solutions LLC; Sudan I. Muhammad; Pangea Concessions Group LLC; Niven Patel; and Rohit Patel

**JUSTICE GABRIEL** delivered the Opinion of the Court.

2

¶1     This case requires us to interpret Rule 15(a) of the Colorado Rules of Civil

Procedure.  Plaintiff below, DIA Brewing Co., LLC, contends that after the district

court entered an order dismissing this action pursuant to C.R.C.P. 12(b)(1),

C.R.C.P. 15(a) gave DIA Brewing the right to amend its complaint as a matter of

course and without leave of the court or the consent of defendants because no

responsive pleading had been filed.  Defendants below, MCE-DIA, LLC and

Richard Schaden (collectively, "MCE-DIA"), in contrast, contend that the

C.R.C.P. 12(b)(1) dismissal resulted in a final judgment that cut off DIA Brewing's

right to amend as a matter of course under C.R.C.P. 15(a).  Thus, MCE-DIA

contends that if DIA Brewing wanted to amend, it was required to seek leave of

the court or to obtain MCE-DIA's written consent.  We granted certiorari to resolve

this dispute.[1]

¶2     Reading C.R.C.P. 15(a) harmoniously with C.R.C.P. 59 and C.R.C.P. 60, as

we must, we now conclude that a final judgment cuts off a plaintiff's right to file

an amended complaint as a matter of course under C.R.C.P. 15(a).  We further

---

[1] Specifically, we granted certiorari to review the following issue:

> Whether an order dismissing all of a plaintiff's claims without prejudice for lack of subject matter jurisdiction under C.R.C.P. 12(b)(1) constituted an appealable final judgment that cut off the plaintiff's right to amend as a matter of course under C.R.C.P. 15(a).

3

conclude that the dismissal order here constituted a final judgment and that therefore DIA Brewing did not have the right to amend its complaint as a matter of course but rather was obligated, if it wished to amend, to seek relief from the judgment and to file a motion requesting leave to amend or indicating that MCE-DIA had consented in writing to the filing of an amended complaint.

¶3 Having reached that conclusion, we must consider the proper remedy. Although MCE-DIA would have us conclude that DIA Brewing failed to proceed properly in attempting to amend its complaint and therefore this case should be closed, we cannot ignore the facts that (1) our opinion today clarifies the scope of C.R.C.P. 15(a); (2) in its response to MCE-DIA's motion to dismiss, DIA Brewing noted its desire to seek to amend its complaint if the court found the complaint deficient; (3) although DIA Brewing did not formally seek relief from the judgment or leave to amend its complaint, it filed an amended complaint in the district court; and (4) we are in the same position as the district court in terms of our ability to assess the viability of that amended complaint.

¶4 In these circumstances, we deem it appropriate to consider the viability of the amended complaint, and we now conclude, contrary to the district court, that that amended pleading is not futile but rather states viable claims for relief.

¶5 Accordingly, we affirm the judgment of the division below, albeit on different grounds, and we remand this case with directions that the case be

4

returned to the district court with instructions that the court accept DIA Brewing's amended complaint for filing, after which MCE-DIA may respond in the ordinary course.

## I. Facts and Procedural History

¶6 Because this case arises from an order dismissing DIA Brewing's claims, for present purposes, we take the facts principally from the allegations of DIA Brewing's complaint and, where appropriate, from its proffered amended complaint.

¶7 This case involves a dispute over the award of a concessions contract at Denver International Airport ("DIA"). The contract resulted from a Request for Proposals ("RFP") issued by the City and County of Denver Department of Aviation. The RFP specified that the winning bidder would receive a contract to develop, operate, and manage three restaurants and one branded gourmet coffee bar at DIA. The city received five proposals, including one from DIA Brewing and one from MCE-DIA. Following the recommendation of certain DIA officials, the Denver City Council awarded the contract to MCE-DIA. According to a publicly available document, DIA Brewing's bid was ranked fourth out of the five bids.

¶8 DIA Brewing subsequently filed suit, alleging claims of bid-rigging, tortious interference with a prospective business opportunity, civil conspiracy, and violations of the Colorado Organized Crime Control Act. As pertinent here, DIA

5

Brewing alleged that MCE-DIA had conspired with two DIA officials involved in the RFP process, Bhavesh Patel and Mukesh "Mookie" Patel, to ensure that MCE-DIA would be awarded the concessions contract notwithstanding MCE-DIA's failure to meet the minimum requirements for all bidders. (The district court dismissed the claims against both Bhavesh Patel and Mookie Patel on governmental immunity grounds, and those claims are not before us.) DIA Brewing asserted that, as part of this conspiracy, a number of individuals associated with MCE-DIA's bid had bribed Bhavesh Patel to ensure that MCE-DIA would be awarded the contract and that Bhavesh Patel and Mookie Patel had then steered the contract award to MCE-DIA by, among other things, rigging the bids, changing the RFP screening process, and changing or shredding the bid scoresheets. DIA Brewing contended, on information and belief, that it was, in fact, the highest scoring bidder and, thus, it should have been awarded the contract.

¶9 MCE-DIA moved to dismiss the complaint on several different grounds. Pertinent here, MCE-DIA argued that DIA Brewing lacked standing to sue because it had "finished in fourth place" and thus had not suffered any cognizable injury. MCE-DIA further argued that DIA Brewing's claims sounded in fraud but that DIA Brewing had failed to plead fraud with the particularity required by C.R.C.P. 9(b).

6

¶10 DIA Brewing responded that it had adequately pled all of its claims but that, should the district court dismiss any part of its complaint, it should be granted leave to amend pursuant to C.R.C.P. 15(a).

¶11 The district court agreed with MCE-DIA's arguments and granted the motions to dismiss without reference to the request from DIA Brewing for leave to amend. Notably, although the district court's minute orders indicated that the court had dismissed the action without prejudice, they also indicated that the court had closed the case.

¶12 Approximately one-and-a-half months later, and after MCE-DIA had filed a bill of costs and a motion for attorney fees, DIA Brewing filed a First Amended Complaint and Demand for Jury Trial. In doing so, DIA Brewing did not seek relief from the court's dismissal order. Nor did it move for leave to file an amended complaint or file a pleading indicating that MCE-DIA had consented in writing to the filing of an amended complaint.

¶13 DIA Brewing's proffered first amended complaint comprised 28 pages and 176 paragraphs of detailed allegations regarding the purported bid-rigging scheme. Among other things, the amended complaint made the following allegations, which we detail at some length given the questions presented here as to the viability of such allegations:

¶14 Bhavesh Patel had informed the people who would ultimately form MCE-DIA that he was designing and would have DIA issue what ultimately became the RFP at issue. Based on this inside information, MCE-DIA was formed.

¶15 To ensure that MCE-DIA would be awarded the contract, people associated with MCE-DIA bribed Patel to steer the contract to MCE-DIA in return for their agreement to include Patel's designees as part owners of MCE-DIA. Patel accepted this bribe.

¶16 Thereafter, Patel met with Schaden and other representatives of a restaurant that would ultimately become part of MCE-DIA's bid. At this meeting, Patel discussed the scheme by which MCE-DIA would obtain the contract, and after the meeting, Schaden joined in the alleged conspiracy.

¶17 In furtherance of this conspiracy, MCE-DIA did, in fact, include Patel's designees as owners of MCE-DIA, in exchange for his assurance that MCE-DIA would get the contract. Patel then completed his work in designing the RFP.

¶18 Notwithstanding Patel's efforts to help build MCE-DIA into a viable bidder, MCE-DIA submitted the weakest of the bids received because, in multiple respects described in detail in the amended complaint, its bid did not comply with the terms of the RFP.

¶19 After the bids had been submitted, Patel asked to see them, which DIA's lead administrator for the RFP found unusual. With access to the bids, Patel was

8

able to assess the strengths and weaknesses of the bidders before designing the scorecards and scoring matrix that the judges would use, and he designed the scorecards and scoring matrix with this information in mind. Specifically, although the RFP detailed the weight to be assigned to each of a number of identified criteria on which the judges were to base their evaluations, Patel designed scorecards with sixty line-item categories, each of which required the judges to assign a score. As Patel designed it, each of these line items had its own weight, separate and apart from the weights identified in the RFP itself. In this way, Patel was able to manipulate the scoring matrix to ensure that MCE-DIA would be ranked first, regardless of the judges' scores.

¶20 Thereafter, each of the bidders appeared for a presentation and an interview. Although generally only the lead administrator would speak during such meetings, Bhavesh Patel, who was seated in the room, controlled much of the questioning by sending texts to Mookie Patel with instructions that he attack DIA Brewing. In addition, through a subordinate, Bhavesh Patel also asked the lead administrator to ask questions highlighting the bidders' minority participation, which was an area that Patel viewed as favorable for MCE-DIA.

¶21 Although the lead administrator and others felt that MCE-DIA lacked the experience and qualifications to receive the contract, the judges were ultimately informed that MCE-DIA somehow had received the highest score. Four of the

9

seven judges were outraged to learn this, and several objected and sought to change their scoring. Notwithstanding the foregoing, MCE-DIA was subsequently awarded the contract.

¶22 Thereafter, questions were raised as to whether MCE-DIA's bid matched the RFP and as to the scoring of the bids. Those raising such questions, however, were advised that the scoresheets had been shredded. And although it was represented that this was done according to policy, in fact, it was done at Bhavesh Patel's direction and contrary to the lead administrator's statement to the judges that the scoresheets would remain in the possession of airport staff after the conclusion of the interviews.

¶23 At the conclusion of the RFP process, several participants in and witnesses to the process, all of whom were specifically named in the complaint, stated in words or substance that it was not possible that MCE-DIA could have been awarded the contract and that DIA Brewing should have been the winning bidder. Consistent with such sentiments, in a meeting between Bhavesh Patel and a prominent member of the concessions industry with whom Patel was speaking about securing a job at another airport, Patel boasted that he could rig RFP processes to determine the winner and that he, in fact, had steered the concessions contract at issue "away from the Wynkoop people" (referring to DIA Brewing) and to MCE-DIA.

¶24 Lastly, the amended complaint alleged that the FBI had begun an investigation into the purported bid-rigging scheme and that, in the course of this investigation, and after the original complaint had been filed, a recording had been made of a conversation between Bhavesh Patel and a representative of MCE-DIA in which the two discussed the lawsuit. In the course of this conversation, Patel stated, "[T]hey know what we did."

¶25 Upon being served with DIA Brewing's lengthy amended complaint, MCE-DIA moved to strike that pleading on the grounds that it was untimely, that it had been filed without any motions for leave or to vacate the district court's judgment, and that DIA Brewing still had not properly pleaded fraud with the requisite particularity or facts to establish its standing to sue.

¶26 The district court ultimately agreed with MCE-DIA. In particular, the court found that its prior ruling was a final judgment and thus cut off DIA Brewing's right to file an amended complaint. As a result, DIA Brewing's filing was "contrary to procedure" and "improper." Even were the court to ignore the finality of its own judgment, however, the court concluded that the proposed amendment was futile because the amended complaint, like the original complaint before it, still failed to establish DIA Brewing's standing to sue (based on the published ranking of the bids) and again did not plead fraud with the requisite particularity (but rather merely listed more "accusations," "suppositions," and

11

"perceived improprieties"). The district court thus refused to accept for filing DIA Brewing's amended complaint and reaffirmed its prior dismissal as a final appealable order.

¶27 DIA Brewing then appealed. A motions division of the court of appeals dismissed as untimely the portion of the appeal addressing the dismissal of the original complaint but permitted the appeal to proceed as to the district court's order striking the amended complaint. *DIA Brewing Co. v. MCE-DIA, LLC*, 2020 COA 21, ¶ 12, __ P.3d __.

¶28 Thereafter, in a published decision, a divided merits division reversed the district court's order. *Id.* at ¶ 3. As pertinent to the issues before us, the majority concluded that the order dismissing DIA Brewing's original complaint without prejudice was not final and, as a result, DIA Brewing retained the right to amend the complaint once as a matter of course pursuant to C.R.C.P. 15(a). *DIA Brewing Co.*, ¶¶ 3, 13–37. The majority further concluded that because DIA Brewing had a right to file an amended complaint, the district court erred when it applied the futility doctrine to that amended complaint. *Id.* at ¶¶ 3, 38–41. As a result, the majority reversed the order striking the amended complaint and remanded the case for further proceedings. *Id.* at ¶ 42.

¶29 Judge Fox dissented. *DIA Brewing Co. v. MCE-DIA, LLC*, 2020 COA 21, ¶¶ 43–73, __ P.3d __ (Fox, J., dissenting). In her view, the order dismissing DIA

12

Brewing's original complaint was final. *Id.* at ¶¶ 43, 54–73. She further concluded that once the district court entered its final judgment, DIA Brewing lost its right to amend as a matter of course. *Id.* at ¶¶ 43, 48–53. And because she concluded that the district court had properly struck the amended complaint, she did not address the district court's alternative conclusion that the amended complaint was futile. *Id.* at ¶ 73.

¶30 MCE-DIA petitioned this court for a writ of certiorari, and we granted that petition.

## II. Analysis

¶31 We begin by addressing the applicable standard of review and the principles governing the interpretation of our procedural rules. Next, we address the proper interpretation of C.R.C.P. 15(a). Considering that rule in the context of the civil rules as a whole, we conclude, consistent with other courts that have considered the issue, that a final judgment cuts off the right to amend a complaint as a matter of course. Turning then to the facts before us, we conclude that the dismissal order at issue was a final judgment and thus cut off DIA Brewing's right to amend its complaint as a matter of course and required DIA Brewing to obtain either leave of the court or MCE-DIA's written consent to file an amended complaint. Finally, we address the appropriate remedy in this case.

13

## A. Standard of Review and Principles of Rule Interpretation

¶32 We review a district court's interpretation of the Colorado Rules of Civil Procedure de novo. *See Mason v. Farm Credit of S. Colo.*, 2018 CO 46, ¶ 7, 419 P.3d 975, 979. We interpret the rules by applying settled principles of statutory construction. *Willhite v. Rodriguez-Cera*, 2012 CO 29, ¶ 9, 274 P.3d 1233, 1236. Thus, we interpret the rules according to their commonly understood and accepted meanings. *Mason*, ¶ 7, 419 P.3d at 979. In addition, we read the rules as a whole, "giving consistent, harmonious, and sensible effect to all of [their] parts and avoiding constructions that would render any words or phrases superfluous or lead to illogical or absurd results." *Pineda-Liberato v. People*, 2017 CO 95, ¶ 22, 403 P.3d 160, 164 (discussing statutory interpretation); *accord Willhite*, ¶ 9, 274 P.3d at 1236.

¶33 We construe the rules "liberally to effectuate their objective to secure the just, speedy, and inexpensive determination of every case and their truth-seeking purpose." *DCP Midstream, LP v. Anadarko Petroleum Corp.*, 2013 CO 36, ¶ 24, 303 P.3d 1187, 1193; *accord* C.R.C.P. 1(a). In addition, "[b]ecause the Colorado Rules of Civil Procedure are patterned on the federal rules, we may also look to the federal rules and decisions for guidance." *Garrigan v. Bowen*, 243 P.3d 231, 235 (Colo. 2010).

14

¶34 Appellate courts generally review a district court's denial of a motion seeking leave to amend a complaint for an abuse of discretion. *Benton v. Adams*, 56 P.3d 81, 85 (Colo. 2002). When, however, a trial court denies leave to amend on the ground that the amendment would be futile, we review that question de novo. *Id.* Likewise, "[b]ecause standing is a question of law, we review the issue de novo." *Ainscough v. Owens*, 90 P.3d 851, 856 (Colo. 2004). And we review de novo a district court's order dismissing a complaint for failure to plead fraud with particularity. *See Baker v. Wood, Ris & Hames, Pro. Corp.*, 2016 CO 5, ¶¶ 58–66, 364 P.3d 872, 883–84 (reviewing de novo a trial court's dismissal of a claim for failing to plead fraudulent concealment with sufficient particularity pursuant to C.R.C.P. 9(b)).

## B. Proper Interpretation of C.R.C.P. 15(a)

¶35 C.R.C.P. 15(a) provides, in pertinent part:

> A party may amend his pleading once as a matter of course at any time before a responsive pleading is filed . . . . Otherwise, a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

¶36 Because it is undisputed that a motion to dismiss is not a responsive pleading, *see Fladung v. City of Boulder*, 438 P.2d 688, 690 (Colo. 1968), DIA Brewing contends that C.R.C.P. 15(a)'s plain language afforded it the right to file an amended complaint as a matter of course. As noted above, however, we cannot read C.R.C.P. 15(a) in isolation. *See Pineda-Liberato*, ¶ 22, 403 P.3d at 164; *Willhite*,

15

¶ 9, 274 P.3d at 1236. Rather, we must consider it in the context of the rules as a whole, construing it so as not to render any other rules superfluous. *See Pineda-Liberato*, ¶ 22, 403 P.3d at 164; *Willhite*, ¶ 9, 274 P.3d at 1236.

¶37 In particular, we must consider DIA Brewing's proposed construction in light of C.R.C.P. 59 and C.R.C.P. 60. C.R.C.P. 59(a) affords a party the right to seek post-trial relief from a judgment, including by requesting the amendment of findings or of a judgment. C.R.C.P. 60(b), in turn, allows for relief from a final judgment or order, including for "[m]istake, inadvertence, surprise, or excusable neglect" or for "any other reason justifying relief from the operation of the judgment."

¶38 Under DIA Brewing's interpretation of C.R.C.P. 15(a), a plaintiff may file an amended complaint as a matter of course after judgment enters following the granting of a motion to dismiss an action, including, for example, for lack of standing, which is what occurred here. Such an interpretation, however, does not give effect to C.R.C.P. 59 and C.R.C.P. 60. Rather, it essentially gives a plaintiff in DIA Brewing's position a right to afford itself relief from a judgment at any time, without needing to request such relief from the court as contemplated by C.R.C.P. 59 and C.R.C.P. 60. We, however, cannot interpret one rule so as to render any other rule meaningless. *See Pineda-Liberato,* ¶ 22, 403 P.3d at 164; *Willhite*, ¶ 9, 274 P.3d at 1236.

16

¶39    Accordingly, we conclude that once a judgment enters and becomes final, a plaintiff no longer has the right to file an amended complaint as a matter of course under C.R.C.P. 15(a).  Rather, such a plaintiff must seek relief from the judgment under C.R.C.P. 59 or C.R.C.P. 60 and must obtain either leave to amend from the court or written consent to amend from the defendant.

¶40    Indeed, although we have not previously addressed this issue, a number of other courts, including divisions of our court of appeals, have done so and have reached the same conclusion.  *See, e.g.*, *Gandy v. Williams*, 2019 COA 118, ¶ 10, 461 P.3d 575, 581 (noting that although the filing of the defendant's motion to dismiss did not terminate the plaintiff's right to amend as a matter of course, the court's granting of that motion and entry of a judgment of dismissal did so); *Harris v. Reg'l Transp. Dist.*, 155 P.3d 583, 587 (Colo. App. 2006) (concluding that because the plaintiff did not file his motion for leave to amend until after the district court had entered its judgment, the plaintiff lost the right to amend as a matter of course); *Est. of Hays v. Mid-Century Ins. Co.*, 902 P.2d 956, 959 (Colo. App. 1995) ("Once final judgment has entered, an amendment to a pleading under C.R.C.P. 15(a) should not be allowed unless the judgment is set aside or vacated."); *Wilcox v. Reconditioned Off. Sys. of Colo., Inc.*, 881 P.2d 398, 400 (Colo. App. 1994) ("[W]hen final judgment is entered before a responsive pleading is filed, the liberal approach of C.R.C.P. 15 must be balanced against the value of preserving the

17

integrity of final judgments. Therefore, if final judgment is entered before a responsive pleading has been served, the absolute right to amend the complaint as a matter of course is lost[,] . . . [and] an amendment should not be allowed unless the original judgment is set aside or vacated under [Rule] 59 or 60(b)."); *see also JBJ Inv. of S. Fla., Inc. v. S. Title Grp.*, 251 So.3d 173, 180 (Fla. Dist. Ct. App. 2018) (noting that, with leave of the court, a party may amend its complaint even after summary judgment has been entered against it); *Lathan v. Hosp. Auth.*, 805 S.E.2d 450, 457 (Ga. Ct. App. 2017) (noting that although the right to amend is broad, it cannot be exercised after judgment has been entered and not set aside).

¶41 In our view, such an interpretation of C.R.C.P. 15(a) reads that rule harmoniously with C.R.C.P. 59 and C.R.C.P. 60. This reading also avoids absurd results. For example, under DIA Brewing's interpretation of C.R.C.P. 15(a), a plaintiff in DIA Brewing's position would have no deadline to file an amended complaint—C.R.C.P. 15(a) states that a party may amend as a matter of course "at any time before a responsive pleading is filed," and on the facts presented here, no responsive pleading will ever be filed.

¶42 Recognizing this issue, at oral argument, counsel for DIA Brewing argued that the court can simply read in a "reasonable time" limitation. But we are not persuaded that DIA Brewing's solution, which would require us to add words to C.R.C.P. 15(a), is preferable to our approach, which gives meaning to

18

C.R.C.P. 15(a), C.R.C.P. 59, and C.R.C.P. 60 without altering the language of any of those rules.

¶43　In so concluding, we are not persuaded by DIA Brewing's reliance on *Passe v. Mitchell*, 423 P.2d 17 (Colo. 1967). As an initial matter, we note that the *Passe* court did not address the issue presently before us. *Id.* at 17–18. Rather, in a two-page opinion, the court ruled, without discussion or analysis, that the district court should not have entered its order dismissing the plaintiff's claims with prejudice before giving the plaintiff an opportunity to amend the complaint. *Id.* The *Passe* court did not hold that a plaintiff can file an amended complaint in spite of the entry of a final judgment. *See id.* at 18. Nor did the court consider the applicability of C.R.C.P. 59 or C.R.C.P. 60 or whether any attempt to amend the complaint would have been futile. *Id.* In these circumstances, we are unwilling to give *Passe* the dispositive weight that DIA Brewing ascribes to it.

¶44　We likewise are unpersuaded by DIA Brewing's reliance on *Wistrand v. Leach Realty Co.*, 364 P.2d 396 (Colo. 1961). The question before us in *Wistrand* was whether a dismissal without prejudice for failure to state a claim on which relief could be granted constituted a final adjudication for claim preclusion purposes. *Id.* at 397. We rejected the defendant's plea of claim preclusion, noting that the district court's designation of its dismissal order as without prejudice signaled the court's intention to allow the plaintiff to return to court to have his claim

19

adjudicated on the merits. *Id.* It is in this context that we stated, albeit without analysis or citation to authority, "On dismissal of the original action [the plaintiff] could have (1) amended its complaint, (2) stood on its complaint and appealed, (3) accepted a dismissal without prejudice or (4) had its rights finally adjudicated by a dismissal with prejudice and failure to appeal." *Id.* We did not, however, opine on the question before us today. *See id.* Nor did we suggest that a plaintiff could amend a complaint as a matter of course after entry of a final judgment. *See id.*

¶45 Having thus concluded that a final judgment cuts off a plaintiff's right to file an amended complaint as a matter of course, we must decide whether the dismissal order at issue was a final judgment. We turn next to that issue.

## C. Finality of Dismissal Order

¶46 "A final judgment is 'one which ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceeding.'" *In re Water Rts. of Elk Dance Colo., LLC*, 139 P.3d 660, 668 (Colo. 2006) (quoting *E.O. v. People in Int. of C.O.A.*, 854 P.2d 797, 800 (Colo. 1993)).

¶47 A court's decision to designate a judgment as with or without prejudice is, to be sure, relevant to the determination of finality. *See Schoenewald v. Schoen*, 286 P.2d 341, 341 (Colo. 1955) (concluding that an order dismissing a complaint

20

"without prejudice to the bringing of a separate action for the determination of issues tendered" was not a final judgment). But such a designation is not alone dispositive for purposes of determining finality and a party's right to appeal. *See United States v. Wallace & Tiernan Co.*, 336 U.S. 793, 794 n.1 (1949) ("That the dismissal was without prejudice to filing another suit does not make the cause unappealable, for denial of relief and dismissal of the case ended this suit so far as the District Court was concerned."); *Moya v. Schollenbarger*, 465 F.3d 444, 448 (10th Cir. 2006) (concluding that, because "the district court in this case intended to dismiss [the plaintiff's] entire cause of action," the dismissal without prejudice was final and the appellate court had jurisdiction). Rather, we must look to the substance of the judgment at issue. *Brody v. Bock*, 897 P.2d 769, 777 (Colo. 1995) ("[A] trial court's characterization of an order to dismiss a claim without prejudice is not dispositive. If a judgment in fact completely resolves the rights of the parties before the court with respect to a claim and no factual or legal issues remain for judicial resolution, the judgment is final as to that claim.") (citation omitted); *see also Moya*, 465 F.3d at 449 ("In evaluating finality, . . . we look to the *substance* and *objective intent* of the district court's order, not just its terminology.").

¶48 In our view, the judgment at issue was final, regardless of whether it was designated as without prejudice. In the district court's order dismissing DIA Brewing's case, it concluded that DIA Brewing had not suffered an injury as the

result of the alleged scheme and therefore lacked standing to bring such a suit. "Standing is a jurisdictional prerequisite that can be raised at any time during the proceedings; if there is no standing, the court must dismiss the case." *People v. Shank*, 2018 CO 51, ¶ 9, 420 P.3d 240, 243. Therefore, after finding that DIA Brewing lacked standing, the district court was compelled to dismiss the case as it lacked jurisdiction to hear it. At that point, there remained nothing for the court to decide and nothing further for the court to pronounce.

¶49 Accordingly, we conclude that the judgment in this case was final and therefore cut off DIA Brewing's right to amend as a matter of course under C.R.C.P. 15(a).

¶50 In so concluding, we decline to define a final judgment in terms of whether a complaint can be cured or not, as DIA Brewing contends and the majority below concluded. *DIA Brewing*, ¶¶ 30–37. In our view, such a rule does not provide a workable or consistent standard. Moreover, such a rule would effectively allow a party like DIA Brewing to decide unilaterally whether the judgment was final. Such a determination, however, is one for the court, not for either of the parties.

¶51 For these reasons, we conclude that the dismissal order at issue was a final judgment, that DIA Brewing therefore did not have the right to file its amended complaint as a matter of course, and that the majority below erred in determining

22

otherwise. Our analysis, however, cannot end there. Rather, we must address the appropriate remedy.

## D. Remedy

¶52 MCE-DIA asserts that because DIA Brewing failed to proceed properly in attempting to amend its complaint, this case should be closed. We, however, cannot ignore the fact that our opinion today clarifies the proper scope and interpretation of C.R.C.P. 15(a), which, as the reasoning of the majority below indicates, appears to have been unsettled. Accordingly, at a minimum, we believe that DIA Brewing should be provided an opportunity to seek relief from the judgment and leave to file its amended complaint. Given that the district court has already determined that its judgment was final and that any amendment would be futile, however, we perceive that no good purpose would be served by remanding for the district court simply to re-enter its previous findings, only to have DIA Brewing appeal again. This is particularly true given that questions as to the viability of DIA Brewing's amended complaint raise solely questions of law and that "[w]hen reviewing a district court's ruling on a motion to dismiss, we are in the same position as the district court." *Baker*, ¶ 62, 364 P.3d at 884. Accordingly, rather than further delay an appellate ruling as to the viability of DIA Brewing's amended complaint, we proceed to consider that question. *See C.S. v. People*, 83 P.3d 627, 630 (Colo. 2004) (reversing the court of appeals division's

23

determination that it lacked jurisdiction to review an appeal but proceeding to address the merits of the appeal, rather than remanding to the court of appeals, in the interest of judicial economy).

¶53 As noted above, the district court concluded that DIA Brewing's effort to amend its complaint was futile because the proffered amended complaint still (1) failed to demonstrate that DIA Brewing had suffered an injury in fact and therefore had standing to sue MCE-DIA and (2) did not plead fraud with the requisite particularity. We respectfully disagree with both of these conclusions, and we address them in turn.

¶54 In order to establish standing, a plaintiff must demonstrate that (1) he or she has suffered an injury in fact and (2) the injury was to a legally protected interest. *Reeves-Toney v. Sch. Dist. No. 1*, 2019 CO 40, ¶ 22, 442 P.3d 81, 86. "[T]he injury-in-fact requirement ensures that an actual controversy exists so that the matter is a proper one for judicial resolution." *Hickenlooper v. Freedom from Religion Found.*, 2014 CO 77, ¶ 9, 338 P.3d 1002, 1006. This requirement further "ensures a 'concrete adverseness' that sharpens the presentation of issues to the court." *Id.* (quoting *City of Greenwood Vill. v. Petitioners for Proposed City of Centennial*, 3 P.3d 427, 437 (Colo. 2000)). The legally-protected-interest prong, in turn, promotes judicial self-restraint and is satisfied when a party asserts claims for relief under

the constitution, the common law, a statute, or a rule or regulation. *Id.* at ¶ 10, 338 P.3d at 1007.

¶55 With respect to any injury in fact, DIA Brewing's amended complaint alleged that (1) DIA Brewing had spent approximately $250,000 in preparing a bid to participate in what it alleges was a rigged process in which it was denied a fair opportunity to compete; (2) Bhavesh Patel deliberately steered the contract away from the "Wynkoop people" (i.e., DIA Brewing); (3) based on the assessments of several participants in the process, had the process been fair and a winner been chosen objectively, DIA Brewing would have been awarded the contract; and (4) as a result of the loss of this contract, DIA Brewing suffered direct economic harm in the form of millions of dollars of lost profits. In our view, these allegations are sufficient to demonstrate an injury in fact and thus support DIA Brewing's standing to bring this suit.

¶56 In so concluding, we are unpersuaded by MCE-DIA's assertion and the district court's conclusion that DIA Brewing lacks standing because its bid was ranked fourth out of the five bids. DIA Brewing has alleged that the ranking was the product of a corrupt process and that in a fair process, its bid would have been ranked first. Such allegations, if ultimately proved, would establish the requisite injury in fact to support DIA Brewing's standing to bring suit. *See Free Air Corp. v. FCC*, 130 F.3d 447, 450 (D.C. Cir. 1997) ("[S]ufficiently viable runners-up in a

25

procurement process have standing to allege that an illegality in the process caused the contract to go to someone else and not to them."); *Nat'l Mar. Union of Am. v. Commander, Mil. Sealift Command*, 824 F.2d 1228, 1237–38 (D.C. Cir. 1987) ("[I]njury to a bidder's right to a fair procurement is obviously an injury both traceable to the alleged illegality in a procurement and redressable by any remedy that eliminates the alleged illegality."); *Cheeks of N. Am., Inc. v. Fort Myer Constr. Corp.*, 807 F. Supp. 2d 77, 94 (D.D.C. 2011) (noting that a disappointed bidder may have standing to bring a bid-rigging conspiracy claim if it can demonstrate that it may have been awarded the contract in the absence of the conspiracy), *aff'd*, No. 11-7117, 2012 WL 3068449 (D.C. Cir. July 26, 2012).

¶57 Turning then to the question of whether DIA Brewing pleaded fraud with sufficient particularity, we note that C.R.C.P. 9(b) provides, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Thus, a complaint alleging fraud must specify the statements that the plaintiff claims were false or misleading, provide particulars regarding the respect in which the statements were fraudulent, allege when and where the statements were made, and identify who made such statements. *State Farm Mut. Auto. Ins. Co. v. Parrish*, 899 P.2d 285, 288 (Colo. App. 1994); *see also United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726–27 (10th Cir. 2006) (noting that, at a minimum, Federal Rule of Civil Procedure 9(b), which is

26

substantively identical to the Colorado Rule, requires a plaintiff to allege the who, what, when, where, and how of the alleged fraud), *abrogated on other grounds by Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 1511–12 (2019).

¶58 Although a plaintiff need not plead all of the evidence that it might present to prove its fraud claim, "the complaint must at least state the main facts or incidents which constitute the fraud so that the defendant is provided with sufficient information to frame a responsive pleading and defend against the claim." *Parrish*, 899 P.2d at 289. In addition, "an allegation 'on information and belief' may be sufficient, if accompanied by a statement on which the belief is founded, when the facts in question are peculiarly within the opposing party's knowledge and the complaint sets forth the factual basis for the plaintiff's belief." *Id.* at 288.

¶59 Here, we have little difficulty concluding that DIA Brewing's amended complaint pleaded fraud with the requisite particularity. As described at length above, the amended complaint detailed every aspect of the alleged bid-rigging conspiracy—from its inception, to the creation of MCE-DIA, to the bribery of Bhavesh Patel, to Patel's manipulation of the scoresheets to ensure that MCE-DIA would be awarded the contract (notwithstanding the fact that its bid did not meet the requirements of the RFP), to the actual contract award, to Patel's directing the destruction of the scoresheets to avoid detection of the bid-rigging scheme, to the

27

current criminal investigation, to Patel's admission that "they know what we did."

Moreover, in making these allegations, DIA Brewing provided detailed information as to who spoke with whom, when, and what was said and done. And DIA Brewing specifically alleged facts, attributed to people involved in the RFP process, to support its contention that had the process been fair, MCE-DIA would not have been awarded the contract and DIA Brewing would have been the successful bidder.

¶60    In our view, these allegations are more than sufficient to satisfy C.R.C.P. 9(b)'s requirement that a plaintiff plead fraud with particularity because they set forth the who, what, when, where, and how of the alleged fraud. Indeed, it is difficult to perceive what else DIA Brewing could have alleged here, particularly given that many of the facts at issue are in the exclusive possession of MCE-DIA and people associated with it. As noted above, C.R.C.P 9(b) does not require that a plaintiff set forth all of its evidence in its complaint. Nor does C.R.C.P. 9(b) require a plaintiff to prove its entire case in its complaint.

¶61    Accordingly, we conclude that DIA Brewing's proffered amended complaint is not futile and properly alleges both standing and the claims set forth in that complaint. We therefore further conclude that the proper remedy here is to remand this case with directions that the case be returned to the district court with instructions that the court accept DIA Brewing's amended complaint for

28

filing, after which MCE-DIA may proceed to respond in the ordinary course. We, of course, express no opinion on the merits of any of DIA Brewing's allegations.

## III. Conclusion

¶62 For the foregoing reasons, we conclude that a final judgment cuts off a plaintiff's right to amend a complaint as a matter of course under C.R.C.P. 15(a). Accordingly, upon entry of a final judgment, in order to amend its complaint, a plaintiff must seek relief from the judgment under C.R.C.P. 59 or C.R.C.P. 60 and may amend its complaint only with leave of the court or with the written consent of the defendant.

¶63 Applying those principles here, we further conclude that the district court's order dismissing DIA Brewing's complaint for lack of standing constituted a final judgment and that therefore DIA Brewing did not have the right to file its amended complaint as a matter of course. Nevertheless, because (1) our opinion today clarifies the proper scope and interpretation of C.R.C.P. 15(a), (2) DIA Brewing filed an amended complaint below, and (3) we are in the same position as the district court in terms of our ability to assess the viability of that amended complaint, we have reviewed the amended complaint and conclude that its filing would not be futile, either for lack of standing or for a failure to plead fraud with particularity under C.R.C.P. 9(b).

¶64    Accordingly, we affirm the judgment of the division below, albeit on different grounds, and we remand this case for further proceedings consistent with this opinion.