23CA1276 Pacific v First 08-01-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA1276 Arapahoe County District Court No. 22CV31657 Honorable Ben L. Leutwyler III, Judge Pacific Express Stables, LLC, a Colorado limited liability company, and Susan Burns, Plaintiffs-Appellants, v. First American State Bank, a Colorado corporation, Defendant-Appellee. JUDGMENT AFFIRMED Division V Opinion by JUDGE HARRIS Brown and Lum, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced August 1, 2024 Robinson & Henry, P.C., Victoria E. Edwards, Kiron K. Kothari, Highlands Ranch, Colorado, for Plaintiffs-Appellants Lewis Roca Rothgerber Christie LLP, Trevor G. Bartel, Frances Scioscia Staadt, Denver, Colorado, for Defendant-Appellee 
1 ¶ 1 Plaintiffs, Pacific Express Stables, LLC and Susan Burns (collectively, Pacific Express), appeal the dismissal of their complaint against defendant, First American State Bank (the bank), and the court’s denial of their motion for reconsideration. We affirm. I. Background ¶ 2 Pacific Express’s amended complaint alleged the following facts. A. Events Leading to the Lawsuit ¶ 3 In June 2015, Pacific Express borrowed about two million dollars from the bank. The promissory note had a maturity date of June 17, 2020, and was secured by a deed of trust on commercial property (the property) owned by Pacific Express. ¶ 4 In February 2020, Pacific Express received the 2019 tax assessment for the property, which was significantly higher than the previous year’s assessment. Pacific Express filed a tax protest. It attempted to pay the undisputed portion of the tax, but the assessor’s website would not accept payment. ¶ 5 In the meantime, as the promissory note’s maturity date approached, Pacific Express sought replacement financing to pay 
2 back the bank. But the COVID-19 pandemic stalled those efforts, so in June, Pacific Express and the bank executed a change in terms agreement,
1 which extended the loan’s maturity date to September 17, 2020, and changed the monthly payment schedule. ¶ 6 In early August, Pacific Express notified the bank that it had found a new lender and would close on a replacement loan within ninety days. The bank assured Pacific Express that, until the replacement financing came through, it would authorize continued deferments or extensions as necessary. ¶ 7 Unbeknownst to Pacific Express, though, the bank had discovered Pacific Express’s tax liability back in June and had begun negotiations to sell the loan to a third party. ¶ 8 In mid-August, the taxing authority notified Pacific Express that the property subject to the deed of trust “was to be sold” to pay the tax lien. The tax sale was later “suspended” on Pacific Express’s “promise of payment.” ¶ 9 On August 31, 2020, the bank notified Pacific Express that it had sold the loan to 2363BSNP LLC (BSNP). Pacific Express 1 The promissory note, deed of trust, and change in terms agreement together comprise the “loan” or “loan agreement.” 
3 immediately contacted BSNP “to attempt to pay off the loan” (though it had not yet closed on its replacement loan) and to determine whether the loan was in default. On September 10, BSNP provided Pacific Express with a payoff statement that included default interest and fees. BSNP explained that the loan was “in default due to [Pacific Express’s] failure to pay the property taxes when due.” A few days later, Pacific Express paid its tax bill. ¶ 10 Pacific Express closed on its replacement loan on October 17, then paid BSNP the remaining balance of the loan, which by that time had accrued over $225,000 in default interest and fees. B. Procedural History ¶ 11 Pacific Express sued the bank and BSNP. It asserted a claim for breach of the duty of good faith and fair dealing (breach of contract claim) against both the bank and BSNP, and it asserted an additional claim for negligent misrepresentation against the bank. About a month later, before either party had been served, Pacific Express filed an amended complaint. ¶ 12 With respect to the breach of contract claim against the bank, the amended complaint alleged that 
4 • the bank had broad discretion in exercising its right to sell the loan; • Pacific Express reasonably expected that the bank would not “surreptitiously sell [the] loan” while simultaneously assuring Pacific Express that it would continue to extend the maturity date and reinstitute a monthly payment schedule until the replacement loan closed; and • the bank breached its duty of good faith and fair dealing by selling the loan while making representations to Pacific Express “that it would assist in transitioning the loan to a take-out lender.” ¶ 13 With respect to the negligent misrepresentation claim, the amended complaint alleged that • in spring and summer of 2020, the bank made misrepresentations of material fact to Pacific Express, including that it would extend the loan’s maturity date past September and allow Pacific Express to resume making monthly payments until the replacement loan closed; 
5 • the bank knew or should have known that Pacific Express would rely on the bank’s representations; and • Pacific Express justifiably relied on the bank’s representations to its detriment. ¶ 14 The bank moved to dismiss the claims against it, arguing that the breach of contract claim failed because the bank had a right to sell the loan without notice, and the negligent misrepresentation claim was barred by the economic loss rule. ¶ 15 In response, Pacific Express expanded the breadth of its breach of contract claim. It now contended that the bank had breached its duty of good faith and fair dealing not only by selling the loan but also by determining that it was in default while purposefully “not ‘declaring’ a formal default” or providing notice. According to Pacific Express, the bank’s conduct allowed BSNP, after purchasing the loan, to immediately formally declare a default and to charge default interest and fees. ¶ 16 The nature of the negligent misrepresentation claim changed, too. Pacific Express argued that the economic loss rule did not bar its claim because the bank’s representations were actually intentional, not negligent. 
6 ¶ 17 Finally, Pacific Express requested that the court, in the event it found “any deficiency” in the amended complaint, allow Pacific Express “the opportunity to amend [its] claims to remedy any such defects.” ¶ 18 The court granted the bank’s motion to dismiss. It found that the breach of contract claim was “dependent upon” the bank’s sale of the loan to BSNP, and because the bank had an unrestricted right to sell the loan without notice, the allegations failed to state a claim for breach of contract. The court also concluded that the economic loss rule barred the negligent misrepresentation claim. The court’s order did not indicate whether the claims were dismissed with or without prejudice. ¶ 19 Pacific Express did not move for leave to amend. Instead, it filed a motion for reconsideration under C.R.C.P. 121, section 1-15, which applies to motions to reconsider interlocutory orders. It asked the court to reconsider the narrow question of whether it had stated a breach of contract claim based on the amended complaint’s allegation that the bank “determine[ed] in June 2020” that the loan was in default but failed to notify Pacific Express. 
7 ¶ 20 In its order denying the motion for reconsideration, the court reiterated that the amended complaint did not state a claim for breach of contract. It did not mention the negligent misrepresentation claim. The court then determined that “the defect in the Complaint c[ould] not be cured by pleading additional facts,” and, therefore, Pacific Express’s claims against the bank were dismissed with prejudice. From there, the court concluded that the motion for reconsideration had to be construed as a C.R.C.P. 59 motion to amend a final judgment. And because the motion failed to satisfy that standard, the court denied it. ¶ 21 The claim against BSNP was still proceeding, however, so Pacific Express moved under C.R.C.P. 54(b) to certify as a final judgment the orders dismissing its claims and denying its motion for reconsideration. The trial court obliged, and Pacific Express now appeals. II. Discussion ¶ 22 Pacific Express challenges the court’s orders on two grounds. First, it contends that the trial court erred by dismissing its claims against the bank, because the amended complaint plausibly stated claims for breach of contract and negligent misrepresentation. 
8 Second, it contends that, even if dismissal was proper, the court erred by determining that further amendment would be futile and dismissing the claims with prejudice.
2 A. The Court Did Not Err by Dismissing the Claims ¶ 23 Pacific Express says that in dismissing the claims, the trial court “overlooked key facts” alleged in the amended complaint. We disagree. 1. Standard of Review ¶ 24 Under the plausibility standard adopted in Warne v. Hall, 2016 CO 50, ¶ 24, a claim is subject to dismissal unless the complaint’s factual allegations are sufficient to “raise a right to relief ‘above the speculative level,’ and provide ‘plausible grounds’ to create an inference that the allegations are true.” Walker v. Women’s Pro. Rodeo Ass’n, 2021 COA 105M, ¶ 37 (quoting Warne, 2 Pacific Express also argues that even if the court properly dismissed the claims with prejudice, reversal is nonetheless required because the ruling is attributable to its former counsel’s gross negligence. That argument was not raised below, so we need not address it. See Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C., 2012 CO 61, ¶ 18. At any rate, the argument is moot in light of our analysis, because we ultimately consider the factual allegations Pacific Express contends its former counsel should have included in the amended complaint or in a proposed second amended complaint. 
9 ¶ 9). Thus, the plausibility standard requires that the complaint “contain either direct or inferential allegations respecting all the material elements [of the particular cause of action] necessary to sustain a recovery under some viable legal theory.” Adams Cnty. Hous. Auth. v. Panzlau, 2022 COA 148, ¶ 51 (quoting Bryson v. Gonzales, 534 F.3d 1282, 1286 (10th Cir. 2008)). ¶ 25 We review de novo the trial court’s dismissal of a complaint under C.R.C.P. 12(b)(5). Norton v. Rocky Mountain Planned Parenthood, Inc., 2016 COA 3, ¶ 10, aff’d, 2018 CO 3. In doing so, we accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. Id. ¶ 26 Here, the trial court’s ruling turned in part on the interpretation of the loan agreement. Interpretation of a contract is a question of law that we likewise review de novo. Fed. Deposit Ins. Corp. v. Fisher, 2013 CO 5, ¶ 9. 2. Breach of Contract Claim ¶ 27 In Colorado, every contract contains an implied duty of good faith and fair dealing. Univ. of Denver v. Doe, 2024 CO 27, ¶ 51. The duty arises “only when the manner of performance under a specific contract term allows for discretion on the part of either 
10 party.” Amoco Oil Co. v. Ervin, 908 P.2d 493, 498 (Colo. 1995). Discretion in performance occurs where the parties “defer a decision regarding performance terms of the contract,” leaving one party with the power “to set or control the terms of performance.” Id. (citation omitted). ¶ 28 This implied covenant does not, however, operate to contradict any terms or conditions for which a party has bargained. Doe, ¶ 51. Rather, it prevents one party from using discretion conferred by the contract to act dishonestly or otherwise outside of accepted commercial practices to deprive the other party of the benefit of the contract. Dream Finders Homes LLC v. Weyerhaeuser NR Co., 2021 COA 143, ¶ 66. ¶ 29 Pacific Express contends that the court erred by overlooking one of its theories of the breach of contract claim. It says that the amended complaint “set forth in detail how [the bank] abused its discretion in defaulting [Pacific Express’s loan] without notice for failure to pay the property taxes.” According to Pacific Express, the terms of the parties’ loan agreement did not allow the bank to “call a default” on the loan for failure to pay taxes if Pacific Express was disputing the tax assessment in good faith. 
11 ¶ 30 The primary problem with Pacific Express’s argument is that the amended complaint did not, in fact, allege that the bank had declared the loan in default for failure to pay taxes. The amended complaint alleged only that (1) the bank discovered Pacific Express’s tax liability in June 2020; (2) it did not notify Pacific Express of the discovery; and (3) two months later, it sold the loan to BSNP. ¶ 31 Indeed, the amended complaint alleged that BSNP, not the bank, declared a default. Pacific Express’s theory was that BSNP had breached its duty of good faith and fair dealing by waiting until September to advise Pacific Express that the loan was in default and, as a result, caused Pacific Express to incur damages. The trial court denied BSNP’s motion to dismiss and allowed that claim to proceed. ¶ 32 Because the amended complaint did not allege that the bank declared a default, the court did not err by failing to consider that allegation. 3. Negligent Misrepresentation ¶ 33 To state a claim for negligent misrepresentation, the plaintiff must allege facts showing that (1) the defendant, in the course of its business; (2) made a misrepresentation of a material fact in the 
12 context of a business transaction, without exercising reasonable care; (3) with knowledge that the plaintiff would rely on its representation; and (4) the plaintiff justifiably relied on the misrepresentation to its detriment. Allen v. Steele, 252 P.3d 476, 482 (Colo. 2011). ¶ 34 But even when the plaintiff sufficiently pleads a negligent misrepresentation claim, the economic loss rule may bar it. Under the economic loss rule, the same economic injury cannot give rise to both contract and tort liability. Bermel v. BlueRadios, Inc., 2019 CO 31, ¶ 20. Thus, “a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law.” Id. at ¶ 15 (quoting Town of Alma v. AZCO Constr., Inc., 10 P.3d 1256, 1264 (Colo. 2000)). The economic loss rule does not bar claims arising from a defendant’s precontractual conduct, however, “because, at that time, there was no contract that could have subsumed identical tort duties.” Dream Finders, ¶ 49. ¶ 35 The trial court reasoned that Pacific Express’s negligent misrepresentation claim was just a variation on its breach of contract claim: both claims were premised on the bank’s sale of the 
13 loan to BSNP and alleged the same economic loss; therefore, the tort duty that the bank allegedly breached was subsumed by the bank’s express or implied contractual duty. See id. at ¶ 66 (explaining that to the extent the defendant owed the plaintiff a duty to not make misrepresentations during the contract period, “such duty was subsumed within the contract through the implied duty of good faith and fair dealing”). Thus, the court determined that the economic loss rule barred the negligent misrepresentation claim. ¶ 36 On appeal, Pacific Express does not challenge the court’s application of the economic loss rule to alleged misrepresentations concerning the sale of the loan. Instead, it says that the court overlooked the amended complaint’s allegations of precontractual misrepresentations, to which the economic loss rule does not apply. According to Pacific Express, paragraph 23 of the amended complaint alleged that the bank made misrepresentations about the change in terms agreement just before the parties signed it in June 2020. ¶ 37 But paragraph 23 contains no such allegation. There, Pacific Express alleged that just before the parties executed the change in 
14 terms agreement, which extended the promissory note’s maturity date to September 17, 2020, the bank assured Pacific Express that if replacement financing did not materialize before September 17, the maturity date could once again be extended. There was no allegation that the bank misrepresented any term or condition of the change in terms agreement. ¶ 38 Because the amended complaint did not allege that the bank made precontractual misrepresentations that induced Pacific Express to enter into the change in terms agreement, the court did not err by failing to consider such allegations. B. The Court Did Not Err by Dismissing the Claims With Prejudice on Futility Grounds ¶ 39 Next, Pacific Express argues that the trial court erred by dismissing the claims with prejudice on futility grounds. Even assuming an error, Pacific Express has failed to demonstrate prejudice; therefore, we discern no basis to reverse the judgment. 1. Legal Principles and Standard of Review ¶ 40 C.R.C.P. 15(a) permits a party to amend its complaint “once as a matter of course at any time before a responsive pleading is filed.” 
15 Otherwise, a party may amend the complaint “only by leave of court or by written consent of the adverse party.” Id. ¶ 41 A motion to dismiss is not considered a responsive pleading for purposes of Rule 15. Gandy v. Williams, 2019 COA 118, ¶ 10. Thus, in granting a motion to dismiss, the trial court generally should not dismiss the claims with prejudice to avoid depriving a plaintiff of its right to amend as a matter of course unless the plaintiff has waived its right to file an amended complaint. See, e.g., Passe v. Mitchell, 161 Colo. 501, 502, 423 P.2d 17, 17-18 (1967). ¶ 42 Still, even when a plaintiff has not previously amended its complaint, “once a judgment enters and becomes final, a plaintiff no longer has the right to file an amended complaint as a matter of course under C.R.C.P. 15(a).” Schaden v. DIA Brewing Co., 2021 CO 4M, ¶ 39. Under those circumstances, the plaintiff must (1) seek relief from judgment under C.R.C.P. 59 or C.R.C.P. 60 and (2) obtain leave to amend from the court or written consent to amend from the defendant. Id.; see also Est. of Hays v. Mid-Century Ins. Co., 902 P.2d 956, 959 (Colo. App. 1995) (“Once final judgment has 
16 entered, an amendment to a pleading under C.R.C.P. 15(a) should not be allowed unless the judgment is set aside or vacated.”). ¶ 43 But when amendment would be futile, the court may dismiss claims with prejudice and indicate that a motion for leave to amend would not be granted. Brereton v. Bountiful City Corp., 434 F.3d 1213, 1219 (10th Cir. 2006); see also Benton v. Adams, 56 P.3d 81, 86 (Colo. 2002) (“The doctrine of futility authorizes a trial court to deny leave to amend pleadings if doing so would be futile.”). ¶ 44 Whether amendment would be futile is a legal question that we review de novo. Schaden, ¶ 34. 2. Futility of Amendment ¶ 45 The trial court dismissed Pacific Express’s claims against the bank with prejudice because it determined that amendment could not cure the complaint’s defects. As a result, it concluded that the order of dismissal was a final order, construed the motion for reconsideration as a Rule 59 motion, and denied the motion. ¶ 46 Pacific Express says that the court’s process was fundamentally flawed: even assuming the claims were properly dismissed with prejudice, the dismissal order was not a final judgment, and, therefore, the court should not have sua sponte 
17 applied Rule 59’s standard to the motion for reconsideration. Once the court did so, Pacific Express says it lost its ability to seek leave to amend the complaint because amending the complaint after final judgment had entered would first require Pacific Express to obtain an order setting aside the judgment of dismissal under Rule 59 or Rule 60, a tack the court’s order necessarily foreclosed. ¶ 47 We agree with Pacific Express that the trial court’s order of dismissal was not a final judgment. A final judgment is one that ends the action and leaves nothing more for the trial court to do to completely determine the rights of all the parties. E. Cherry Creek Valley Water & Sanitation Dist. v. Greeley Irrigation Co., 2015 CO 30M, ¶ 11. When an order adjudicates the rights of fewer than all the parties, the order is not a final appealable judgment until properly certified as such under C.R.C.P. 54(b). See Lytle v. Kite, 728 P.2d 305, 308-09 (Colo. 1986) (explaining that C.R.C.P. 54(b) creates an exception to the general requirement that an entire case be resolved by a final judgment before an appeal is brought). ¶ 48 But even assuming the court erred by treating its dismissal order as a final judgment and applying Rule 59 to the motion for reconsideration, we cannot reverse the judgment unless the error 
18 substantially prejudiced Pacific Express. See C.R.C.P. 61 (explaining that the reviewing court must “disregard any error or defect in the proceeding which does not affect the substantial rights of the parties”). Pacific Express contends that the court’s error deprived it of an opportunity to seek leave to amend the complaint. That is not entirely accurate. The ruling that precluded Pacific Express from amending its complaint was not the court’s decision to treat its order as final and then apply Rule 59 but rather its determination that amendment would be futile. Therefore, to establish prejudice, Pacific Express must demonstrate that amendment would not be futile. ¶ 49 The bank argues that Pacific Express failed to preserve any claim related to the court’s futility determination by not moving to amend and filing a proposed second amended complaint. But we are not aware of any authority (and the bank cites none) requiring a party to request leave to amend after the trial court has ruled that amendment would be futile. See Schaden, ¶ 52 (declining to remand to trial court so that plaintiff could file an amended complaint where trial court had concluded that amendment would be futile). Still, where a party forgoes filing a proposed amended 
19 complaint in the trial court, it can only establish prejudice by identifying on appeal the factual allegations that it claims would cure any defects in the complaint. ¶ 50 Pacific Express urges us to “consider de novo whether based on the record [its] claims against [the bank] could be saved by amendment.” We accept that invitation and now turn to a review of the additional factual allegations Pacific Express has identified on appeal to determine whether, if pleaded along with the original allegations, they would state claims on which relief could be granted. See id. a. Amendment of the Breach of Contract Claim Would be Futile ¶ 51 Pacific Express says that but for the trial court’s error, it would have pleaded the following allegations to support its breach of contract claim:
3 3 Some of Pacific Express’s allegations are conclusory: that the bank “committed deceptive business practices and likely fraud in setting up [Pacific Express’s] loan for failure” and that the bank “committed acts of deception and concealment that caused [Pacific Express] to relax [its] guard and prevented [it] from protecting [its] rights in [its] property.” We do not accept these allegations as true for purposes of our analysis. See Warne v. Hall, 2016 CO 50, ¶ 27. 
20 • The 2015 promissory note was due and payable on June 17, 2020. • In June 2020, while Pacific Express was seeking replacement financing, it entered into the change in terms agreement which, among other things, extended the loan’s maturity date to September 17, 2020. • The change in terms agreement included an “unnecessary forbearance” provision that “t[ook] [the loan] out of the autopay program” for three months beginning in June 2020. As a result, the bank did not provide Pacific Express with billing statements for June, July, and August. • The change in terms agreement also allowed the bank to “find a default” if a tax sale was initiated against the property, but not if Pacific Express had initiated a dispute, in good faith, with the taxing authority concerning the tax assessment. • In June 2020, the bank discovered that Pacific Express had failed to pay property taxes. The bank did not inform Pacific Express that “it had an issue with nonpayment of the taxes,” because the bank did not ultimately “call[] the [promissory] note” or “tak[e] [any other] action.” 
21 • Although the bank did not “declar[e] a formal default,” it “mark[ed] the loan as defaulted.” • In June and August 2020, the bank “refused to answer [Pacific Express’s] direct question” regarding whether the loan was “in default.” This “obfuscation” caused Pacific Express to incur damages because BSNP charged default interest and fees “going back to the date of [the bank’s] determination in June 2020 of a purported default.” In effect, then, the bank increased the loan’s interest rate from five percent to thirty-six percent beginning in June 2020 without informing Pacific Express. • During the summer of 2020, the bank assured Pacific Express that it would grant further modifications and extensions to the loan agreement as necessary, including allowing Pacific Express to resume its regular monthly payments in September. • All the while, the bank was “taking surreptitious steps” to sell the loan to BSNP. The bank “received more money” from BSNP than it otherwise would have because it did not tell Pacific Express about the “putative default.” 
22 • In mid-August, the taxing authority initiated a tax sale of the property, but the sale did not occur because Pacific Express paid the taxes in mid-September. • On August 31, the bank told Pacific Express that it had sold the loan to BSNP. • On September 10, BSNP provided Pacific Express with a payoff statement that included default interest and fees. BSNP told Pacific Express that the loan was in default due to its failure to “pay the property taxes when due.” • Pacific Express “would have paid the property tax bill earlier” if the bank or BSNP had “responded to [its] inquiries.” ¶ 52 At bottom, Pacific Express alleges that the bank had a duty to tell Pacific Express that the failure to pay its taxes constituted an event of default, even though the bank, after learning of Pacific Express’s tax liability, decided not to formally declare a default or take any other action against Pacific Express. According to Pacific Express, unless the bank advised it that an event of default had occurred, it would not have known that failing to pay its taxes, especially while engaged in a good faith dispute with the taxing authority, would qualify as an event of default that could then be 
23 formally declared an actual default resulting in the imposition of default interest and fees. ¶ 53 As an initial matter, on our de novo review, we may consider, in addition to the facts alleged in the complaint, any “documents attached as exhibits or incorporated by reference.” Denver Post Corp. v. Ritter, 255 P.3d 1083, 1088 (Colo. 2011). The promissory note, the deed of trust, and the change in terms agreement were all incorporated by reference in the complaint. ¶ 54 Under the deed of trust, Pacific Express’s failure to “pay all taxes . . . related to the [p]roperty when due” constituted an “event of default.” As a matter of law, “one who signs or accepts a written contract, in the absence of fraud, is conclusively presumed to know its contents and to assent to them.” Bell v. Land Title Guarantee Co., 2018 COA 70, ¶ 14. Thus, the bank gave Pacific Express notice, through the deed of trust, that a failure to pay its property taxes constituted an event of default. ¶ 55 The loan agreement did not otherwise obligate the bank to give Pacific Express notice of an event of default where the bank elected not to exercise any remedy. Nor did it give the bank discretionary authority to determine the manner of providing such notice. See 
24 Amoco Oil, 908 P.2d at 498 (The duty of good faith and fair dealing only applies when “one party has discretionary authority to determine certain terms of the contract, such as quantity, price, or time.”). ¶ 56 In Amoco Oil, for example, Amoco leased service station facilities to independent dealers pursuant to written contracts that expressly gave Amoco the discretion to modify the monthly rental amount. Id. at 498-99. The “open rental terms” required the dealers to depend on Amoco’s good faith and “created a duty of good faith and fair dealing for Amoco.” Id. at 499. ¶ 57 Pacific Express does not point to any equivalent provision in the loan agreement — i.e., a term that conferred discretion on the bank regarding whether or when to provide notice of an event of default. Thus, to find any duty to provide notice, we would have to add terms to the loan agreement. And we cannot apply the duty of good faith and fair dealing to “inject substantive terms into the parties’ contract.” McDonald v. Zions First Nat’l Bank, N.A., 2015 COA 29, ¶ 70 (citation omitted); see also Miller v. Bank of N.Y. Mellon, 2016 COA 95, ¶ 46 (borrowers’ breach of the duty of good faith and fair dealing claim against lenders failed where the claim 
25 was not based on “any terms of performance that were left to the [lenders’] discretion under the loan documents”). ¶ 58 Contrary to Pacific Express’s argument, it did not have to depend on the bank’s good faith to learn that its tax liability had caused an event of default. Pacific Express suggests that it could not have known that its failure to pay taxes would lead to a default when it was engaged in a good faith dispute with the taxing authority because disputed tax liability was expressly excepted as an event of default under the change in terms agreement. ¶ 59 The change in terms agreement refutes that allegation. See Peña v. Am. Fam. Mut. Ins. Co., 2018 COA 56, ¶ 15 (“[W]hen documents are properly before the court [on a C.R.C.P. 12(b) motion to dismiss], their legal effect is determined by their contents rather than by allegations in the complaint.”); Hoefling v. City of Miami, 811 F.3d 1271, 1277 (11th Cir. 2016) (“[I]f the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls.”). Under the change in terms agreement, a failure to pay taxes resulting in a tax lien or initiation of a tax sale would not constitute an event of default only if there was a good faith dispute by Pacific Express as to the validity of the 
26 assessment, and Pacific Express gave the bank notice of the tax proceeding, and Pacific Express deposited with the bank “monies or a surety bond” for the proceeding in an amount to be determined by the bank. Because Pacific Express did not allege that it complied with this provision, the complaint failed to allege facts demonstrating that the exception applied. ¶ 60 To the extent the allegations relate to the bank’s sale of the loan to BSNP, the trial court found, and we agree, that the bank had a right to sell the loan without notice at any time. Thus, the bank did not breach any duty to Pacific Express by selling the loan to BSNP without notice. See Miller, ¶¶ 42-43 (borrowers could not state claim for breach of the duty of good faith and fair dealing because they had no reasonable expectation that their loan would be modified where the loan agreement did not require the lender to consider or agree to a modification). ¶ 61 And to the extent the allegations relate to the bank’s representations and assurances that it would continue to grant modifications and extensions to the loan agreement, Pacific Express does not explain, and we do not see, how those allegations give rise to a breach of contract claim. 
27 ¶ 62 In sum, we conclude that the breach of contract claim fails as a matter of law. Thus, the trial court properly determined that amendment would be futile. b. Amendment of the Negligent Misrepresentation Claim Would be Futile ¶ 63 Pacific Express says that but for the trial court’s error, it would have pleaded the following allegations to support its negligent misrepresentation claim: • In June 2020, Pacific Express entered into the change in terms agreement that extended the loan’s maturity date from June 17 to September 17, 2020. The bank represented to Pacific Express that the change in terms agreement “would not adversely affect their current loan terms.” • Just before Pacific Express signed the change in terms agreement, the bank represented that “it would provide an extension on the [promissory] note past the maturity date of September 17, 2020,” so that Pacific Express could obtain a replacement loan. The bank also represented that, “in the worst-case scenario,” it would allow Pacific Express to “return to making monthly payments.” 
28 • The bank knew that Pacific Express’s principal was visually impaired. It provided Pacific Express with the “electronic version” of the change in terms agreement, which was “illegible.” • Pacific Express’s principal asked the bank if the change in terms agreement “contained the terms as [the bank had] represented to her” during an earlier phone conversation. • Pacific Express’s principal offered to review and sign the change in terms agreement at the bank, but the bank “demanded that [Pacific Express] sign the [change in terms agreement] immediately,” or the bank would “withdraw the extension after the [June 17, 2020] maturity date had expired.” • Pacific Express signed the change in terms agreement on July 10, 2020, but “back-dated [it] to June 17, 2020.” • The bank “fraudulently induced” Pacific Express to “enter into a new, less favorable loan,” then “secretly call[ed] the note for [Pacific Express’s] failure to pay taxes.” ¶ 64 Mostly, these allegations are not materially different from those pleaded in the amended complaint. To get around the 
29 economic loss rule, however, Pacific Express now maintains that the bank made misrepresentations that induced it to enter into the change in terms agreement. ¶ 65 Even assuming the change in terms agreement qualifies as a new contract such that the bank’s statements would constitute “pre-contractual” representations, Dream Finders, ¶ 49, the allegations do not state a plausible claim for negligent misrepresentation. ¶ 66 The only misrepresentation Pacific Express alleges the bank made about the change in terms agreement was that it would not “adversely affect [the] current loan terms.”
4 As we understand it, Pacific Express alleges that the change in terms agreement added an event of default — the initiation of forfeiture proceedings by any governmental agency (like a taxing authority) against the property subject to the deed of trust — thereby adversely affecting its rights under the loan agreement. 4 Pacific Express alleges that its principal asked the bank whether the terms and conditions of the change in terms agreement lined up with the representations the bank had made during an earlier phone call. But the allegations do not mention what the bank said in response. 
30 ¶ 67 But that allegation is contradicted by the deed of trust. As noted, the deed of trust, executed in June 2015, made Pacific Express’s failure to pay taxes (regardless of whether a taxing authority initiated forfeiture proceedings) an event of default. So a provision in the 2020 change in terms agreement making forfeiture proceedings based on a failure to pay taxes an event of default did not, in fact, “adversely affect [the] current loan terms.” ¶ 68 As for the allegations that the bank misrepresented its intention to provide additional modifications and extensions to the loan agreement, if necessary, Pacific Express does not explain, through any factual allegation, how it justifiably relied on those misrepresentations to its detriment. To recover for negligent misrepresentation, the plaintiff must suffer a pecuniary loss caused by its justifiable reliance on false information supplied by the defendant. See Colo. Pool Sys., Inc. v. Scottsdale Ins. Co., 2012 COA 178, ¶ 58. Thus, Pacific Express had to allege facts plausibly demonstrating justifiable and detrimental reliance. ¶ 69 But it is not clear from the allegations what action Pacific Express took in justifiable reliance on the bank’s statements that, if replacement financing did not come through by September 2020, it 
31 would further extend the loan’s maturity date and allow Pacific Express to resume monthly payments. The action could not plausibly have been entering into the change in terms agreement because the bank’s statements related to circumstances that would arise only after the new maturity date expired. And in any case, based on our conclusion above, Pacific Express failed to plausibly allege any pecuniary loss resulting from its execution of the change in terms agreement. ¶ 70 Accordingly, even accepting the allegations as true, unless refuted by the loan agreement, we conclude that Pacific Express has failed to state a plausible negligent misrepresentation claim. III. Disposition ¶ 71 The judgment is affirmed. JUDGE BROWN and JUDGE LUM concur.